## Kentucky Live Stock Insurance Company v. Stout.

(Decided May 1, 1917.)

### Appeal from Fayette Circuit Court.

1. Insurance—Livestock Insurance—Insurance Agents—Waiver by Agent.—The special representative of a livestock insurance company entrusted with the duty of soliciting insurance, delivering policies, collecting the premiums and appointing local agents, subject to the approval of the company, may waive a provision of a policy of livestock insurance to the effect that there shall be no liability on the part of the company if the assured shall fail to render at once to the secretary of the company written notice of the sickness of the animal.

2. Insurance—Livestock Insurance—Insurance Agents—Waiver—Authority—Evidence.—In an action on such a policy, evidence of the authority of the agent to waive the provision with reference to notice to the secretary of the company, and of the fact of waiver, considered, and held to make a question for the jury.

J. S. McELROY, JR., for appellant.

W. F. KIMBALL and D. C. HUNTER for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

On September 23, 1914, the Kentucky Live Stock Insurance Company issued to Newton Stout a policy insuring the life of his trotting stallion "Crystal Direct" in the sum of $1,000.00. The stallion died on October 29, 1914, and the company having denied liability, Stout brought this suit to recover on the policy. A trial before a jury resulted in a verdict and judgment for Stout, and the company appeals.

The policy contained the following provisions:

"III. It is expressly agreed that this company shall not be liable for any loss that may occur while any premium, or part thereof, or order given for the premium, remains past due and unpaid; except that the assured shall be entitled to such proportion of the total insurance, as the amount actually paid in cash shall bear to the total amount of the premium, nor shall this company be liable for loss from accident, disease or other cause happening, or having its inception, during the period of such default; and the receipt of such payment shall not be a waiver of this or any other stipulation or condition of this policy. . . . .

"V. There shall be no liability on the part of the company . . . . if the assured, in case of sickness or accident to the animal (or animals) hereby insured, shall fail to render, at once, notice in writing to the secretary of the company of such sickness or accident; and should the company not be satisfied with the care and attention given said animal while sick or disabled, the company reserves the right to remove same from the owner's premises, and take full charge of it, at the expense of the insured, until its death or recovery."

While the company pleaded a violation of both of the above provisions, it abandoned the defense based on the failure of plaintiff to pay the premium before the loss occurred and relied entirely on the defense that plaintiff failed to give written notice of the sickness of the horse to the secretary of the company. In his reply plaintiff pleaded a waiver.

Briefly stated, the facts are as follows: The insurance was solicited by defendant's agent, Roland C. Drake, who lived at Lexington. Drake was the special agent of the company for the states of Indiana, Ohio, Illinois and Kentucky. He had authority to take appli-

cations, deliver policies, collect the premiums and accept premium notes, and appoint local agents, subject to the approval of the company. Stout's application was taken on September 21, 1914. The application was accepted by the company and the policy issued on September 23, 1914, and mailed direct to Stout, who received it a day or two later. The premium of $65.00 was not paid when the policy was delivered, it being agreed between the agent and Stout that the premium might be paid at a later date, either in cash or by note payable in thirty or sixty days. Thereafter Drake and Stout agreed to meet on a certain day and arrange about the premium. Pursuant to this agreement, they did meet at the Leonard Hotel in Lexington, and Stout executed and delivered to Drake a note for the amount of the premium, dated October 17, 1914, and payable in thirty days. The note was forwarded to the company and accepted, and retained by it until after the death of the horse, when it was returned to Stout with a disclaimer of liability.

According to Stout's evidence, the horse was taken ill two days before the meeting at which the note for the premium was executed. When Stout saw Drake on that occasion he immediately told him that the horse was ill, but was on his feet and taking his feed and his illness was not regarded as serious. Drake asked him what steps he had taken to care for the horse. Stout replied that Dr. Hagyard, a veterinary surgeon, of Lexington, had been called to treat the horse. Drake then complimented Dr. Hagyard and assured Stout that he could not have made a better selection if he had searched the world over. On being asked what Drake said when told that the horse was sick, Stout replied: "He said: 'Newt, that is all right, your horse is insured, and it was insured when it was well, and I will take your note for the amount of $65.00 for thirty days, and if you have not got the whole amount at that time, so you can pay it off in thirty days, you can pay half of it in thirty days and renew the other half for sixty or ninety days, and I will send the note in to the company and you will be all right; your horse will be insured.'" After enumerating his duties, Drake testified that on the occasion when the note was executed, Stout stated that he had just come from the track with Dr. Hagyard; that the colt's temperature was about normal, and he was eating all he gave him and Dr. Hagyard thought he

would be all right. He never notified the company that the horse was sick. He did not deny saying to Stout that his insurance was all right. At that time John Smiley was the local agent of the company. E. L. Whitehead, secretary of the company, testified that Drake was employed to take applications for agencies and send them to the home office for approval, and that the company acted largely upon his recommendation. Drake was also to accept and solicit applications for insurance and send them in to the home office just as any other agent would for the company's acceptance or rejection. If the policy was issued, Drake would collect the premium, either at the time of the application or when the policy was delivered, or by some other arrangement that was mutually agreeable to him and the insured. Witness never received any notice of the fact that the horse "Crystal Direct" was sick. After the horse's death, Stout sent the policy in to the company. At that time the policy had a sticker on it stating that notice of the sickness of an animal must be sent immediately. Drake was furnished with blank notes for the purpose of taking notes for premiums. These notes were sent to the company for acceptance or rejection. The company did not exercise its option to cancel the policy in question. The company accepted the note, and if the horse hadn't died it would have expected to collect it. All applications were written in the field, and whether taken by Drake or a local agent were subject to approval at the home office. In rebuttal Stout testified that he did not know of Smiley's being the local agent for the company.

The company insists that on the foregoing showing it was entitled to a peremptory instruction. In support of this position it is argued that the provision of the policy requiring written notice of the sickness of the horse to be given to the secretary of the company was valid, and that notice to the agent of the company was not a compliance with the policy. It may be conceded that there is authority for this position. Alston v. Northwestern Live Stock Ins. Co. (Kansas), 53 Pac. 784; Swan v. Security Live Stock Ins. Co., 165 Mass. 321, 43 N. E. 105; Green v. Northwestern Live Stock Ins. Co., 87 Iowa 358, 54 N. W. 349; National Live Stock Ins. Co. v. Bartlow (Indiana), 110 N. E. 224. However, the case was not submitted to the jury on the theory, nor does plaintiff contend, that notice to Drake was notice to the sec-

retary of the company.  On the contrary, the court, in its instructions, told the jury to find for defendant if they believed from the evidence that written notice of the sickness of the horse was not given to the secretary of the company, and authorized a recovery for plaintiff only in the event they believed from the evidence that Drake, as agent of the company, had authority to waive the terms and provisions of the policy and that, acting within the scope or apparent scope of such authority, he did waive the provision with reference to notice, or dealt with plaintiff in a way that would induce the plaintiff as a reasonable and prudent man to believe that a strict compliance with said provision would be waived. The only question, therefore, is whether the evidence of Drake's authority to waive, and of the fact of waiver, was sufficient to make a question for the jury.  In this connection it must be remembered that insurance companies rarely transact business with the public through their general officers.  Their business is generally carried on through local or special representatives.  The people deal with such representatives on the faith of their authority to do those things which they claim and have the apparent right to do, and to prevent imposition on the public the courts generally hold that forfeiture provisions may be waived by such agents when they, with knowledge of the facts, induce the insured to pay the premium, or to execute a note therefor, upon the assurance that, notwithstanding the forfeiture provision, his insurance is still in force.  Here Drake was a special representative of the company in four different states and had actual authority not only to solicit applications, deliver policies, and collect premiums, but also to appoint local agents, subject to the approval of the company, which generally acted on his recommendation.  When he and plaintiff met on the occasion of the execution of the note for the premium, plaintiff immediately told him of the sickness of the horse and of the employment of a veterinary to treat the horse. Instead of telling plaintiff that his insurance was no longer in force, he took the note in question and sent it to the company, by which it was accepted.  At the same time he told plaintiff that as the horse was insured when well, he could give the note in question and the horse would be insured.  Though claiming a forfeiture because written notice of the sickness of the horse was not given to

the secretary of the company, the secretary admits that if the horse had not died the company would have expected to collect the premium. Insurance companies, will not be permitted to treat the policy as valid for the purpose of collecting premiums and invalid for the purpose of indemnity. Good faith requires that when the facts are brought to the attention of an agent having apparent authority to represent the company, he should notify the insured of the forfeiture, and not induce the insured to incur liability for a premium on a policy that has been forfeited and which the company does not intend to pay in case of loss. We, therefore, conclude that if the facts relied on by plaintiff were true, it was within the apparent authority of Drake to waive the provision with respect to notice, and whether or not he did waive it was a question for the jury. Phoenix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453; Continental Ins. Co. v. Thomason, 27 R. 158, 84 S. W. 546.

The only complaint of the instructions is that the facts did not make out a case for the jury. In view of the foregoing conclusion, further discussion on this question is unnecessary.

Judgment affirmed.