## Brown v. Fidelity Mutual Life Insurance Company.

(Decided January 26, 1923.)

### Appeal from Laurel Circuit Court.

1. Insurance—Life. Insurance—Action Upon Policy—Minor Issues of Fact.—In an equitable action to recover the face value of an insurance policy it was not error to refuse a jury trial on twenty-one minor issues of fact included in the two main issues on which such a hearing was granted.

2. Insurance—Life Insurance—Payment of Premiums—Evidence.— Held that the record discloses no evidence showing that the insurance company, by its course of dealings with the insured, had established a custom of accepting the payment of premiums after maturity without requiring a health certificate or a revival of the policy as provided in the contract of insurance, or that by reason of such a custom the insured was induced to believe, as a reasonable man, that a premium due and not paid by him within the time stipulated in the policy would not be demanded on its due date, but that he would be permitted to pay the premium within a reasonable time thereafter.

3. Insurance—Life Insurance—Payment of Premiums—Waiver.—On an issue as to whether an insurance company had waived its right to require the payment of a premium due on a certain date be-

cause the insured had lost his policy and had requested that the company furnish him a copy of it, and also because the company had caused the insured, as a reasonable man, to believe that no payment of the premiums would be required pending his effort to procure a copy of the policy, held that the evidence on behalf of the insured was not sufficient to warrant the submission of the question to a jury.

4.   Insurance—Payment of Premiums.—An occasional indulgence of the insured in the payment of his premiums on a policy does not establish a custom and will not effect the abrogation of a contract.

5.   Insurance—Payment of Premiums—Forfeiture—Reinstatement.— A policyholder desiring to avail himself of the custom of reinstating a policy after its forfeiture for non-payment of premiums must comply with the customary requirements for reinstatement, and if he fails so to do his inaction is a waiver of any right to claim under the custom permitting reinstatements.

GEORGE G. BROCK and HENRY P. BROWN for appellant.

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT, GROVER G SALES and HAZELWOOD & JOHNSON for appellee.

Opinion of the Court by Judge Moorman—Affirming.

This is an appeal from the judgment of the Laurel circuit court dismissing the petition of appellant, Grace H. Brown, in an equitable action filed by her to recover two thousand dollars on an insurance policy issued December 31, 1903, by the Fidelity Mutual Life Insurance Company on the life of her husband, W. L. Brown.

On May 11, 1886, the predecessor of appellee issued its policy No. 9673 for $2,000.00 on the life of W. L. Brown for an annual premium of $5.00, plus the payment of such assessments as might be required by the company to pay the death claims of its policyholders. That policy was carried for sixteen years at a total cost to the insured of $864.05. In 1903 it was surrendered and appellee issued in the place of it a $2,000.00 yearly renewable term policy. The latter policy, No. 146439, contained a graduated scale of annual premiums ranging from $89.50 at sixty-three years of age to $318.58 at eighty years of age. Neither policy had any loan or cash surrender value or paid-up benefits, the purpose of both policies being to provide protection for the insured at the lowest possible premium rate. The second policy, which is the one involved here, contained the provision, "If any

premium be not paid when due, this policy shall be extended and remain in force for thirty days from due date, and if not then be paid with interest for the time taken at the rate of five per cent per annum, or if any obligation given for premium be dishonored or not paid when due without grace this policy shall be absolutely void, and all moneys paid hereon shall be forfeited to the company, and after said period of thirty days or nonpayment of such obligation, it can only be revived if the insured be in good health upon presentation of a reinstatement certificate signed by said insured, and upon the approval of the same by the president or the vice-president and medical director, but not otherwise.'' The days of grace were later extended by the company to thirty-one.

Brown paid the premiums on this policy, generally in quarterly installments, from 1903 to November 1, 1912, the total amount paid being $1,092.73. He failed to pay the quarterly installment due February 1, 1913, and on March 4th, thirty-one days thereafter, the policy was forfeited. No effort was made by Mr. Brown to obtain a reinstatement of the policy. After his death on June 7, 1917, this action was instituted by his wife, the beneficiary, to recover the full amount of the insurance.

The pleadings show the issuance of the two policies, the aggregate payments made by Brown on each of them, and the cancellation of policy 146439 on March 4, 1913, for failure to pay the quarterly premium due February 1, 1913. They present issues of fact (1) as to whether by its course of dealings with the insured the defendant had established a custom of accepting premiums after their due dates without requiring a health certificate or a revival of the contract, whereby the insured was induced to believe, as a reasonable man, that the installment due February 1, 1913, would not be demanded on that date, but that he might pay it within a reasonable time thereafter; and (2) whether defendant had waived the right to collect the premium due February 1, 1913, on or before the last day of grace—March 4, 1913—because the insured had lost his policy and had requested that defendant furnish him a copy of it, and also whether, by reason of that fact, defendant had caused the insured, as a reasonable man, to believe that no payment of pre-

miums would be required pending his effort to procure a copy of the policy. On motion of plaintiff a jury trial was allowed on these issues; and at the conclusion of the plaintiff's evidence the jury was directed to return a verdict for the defendant and a judgment was rendered dismissing the petition.

It is the contention of plaintiff that the trial court erred in refusing to submit to the jury the twenty-one separate issues of fact embraced in her motion made after she had introduced her evidence and the court had indicated that defendant's motion for a peremptory instruction would be sustained; and also that it was error to direct a verdict for defendant on the two issues on trial before the jury. The first suggestion may be disposed of by saying that the twenty-one minor questions of fact upon which the plaintiff asked a jury trial were included in the two issues on which a jury trial was granted; and that being true, it was manifestly proper to refuse separate hearings on the included questions. The second contention involves a question of fact. If sustainable at all, it is on the theory that the issues were exclusively legal, and there was sufficient evidence on behalf of plaintiff to submit them to the jury. Assuming, therefore, without deciding, that the questions were purely legal and not cognizable concurrently in law or equity, we come to a consideration of the evidence with the view of ascertaining whether it was such as to require a submission of the issues to a jury.

The proof shows that the insured, on a number of occasions after taking out the second policy, did not pay the premium within the thirty-one days of grace allowed; and it also shows a similar practice on his part with reference to the first policy. We do not, however, regard the conduct of the parties in respect to the first policy as having any evidential effect on the custom or practice in regard to the second policy, since the latter policy was a separate contract and the custom as to extending the time of payments of premiums thereon, if one existed, must be determined from the conduct of the parties in reference to that contract and none other. As to that policy, it is in evidence, as we have observed, that the insured frequently did not pay the premiums within the thirty-one days of grace allowed, but it appears that in such instances it was exceptional when he was not required to apply for a reinstatement of the policy and to execute a health certificate. It is shown that on one occasion a

check for a note was received within the time but the check was postdated ten days, and on another a note was not paid until one day after it was past due, and in each case a health certificate was not required. On three or four occasions checks in payment of notes were accepted a day or two after the due dates of the notes, although in every case the check was mailed before the maturing date of the note. In those instances the company treated the payments as having been made as of the dates the checks were mailed and the policy was not forfeited. All other payments were made on time or, when not so made, the insured was required to apply for a reinstatement of the policy and to execute a health certificate. The quarterly premium due November 1, 1912, was not paid within the thirty-one days and the insured was required to make application for a revival of the policy and to sign a revival contract. On December 10, 1912, the insured asked the company for a loan of $500.00 on his policy. The request was declined on the ground that the policy was a yearly renewable policy, having no loan or other surrender value. Shortly thereafter the insured requested a copy of his policy 146439 and also of the old policy, stating that his copies had been burned or misplaced. Within a few days he wrote to the insurer, threatening to bring suit in the United States court to enforce a loan or obtain a paid-up policy. The company declined to send him a copy of the old policy, but offered to furnish a copy of policy 146439 upon his compliance with the usual procedure adopted by the company of furnishing an affidavit showing that the policy had been lost or destroyed. This letter was written on January 14, 1913. The next quarterly installment was due February 1st. On February 28th the insured forwarded the required affidavit, which was received by the company on March 3rd. On March 4th, after the expiration of the thirty-one days of grace, the company wrote to Brown that the policy had been canceled and in view of that fact a copy of it would not be sent to him.

It is said for plaintiff that forfeitures are odious to the law and that an insurance company may, by its course of dealing with the insured, waive its right to forfeit a policy for the nonpayment of dues within the time stipulated in the policy. We do not dissent from this statement; it is the law. But the difficulty that the courts find is in applying it to the facts at hand. The rules for

its application seem to us to be correctly stated in 14 Ruling Case Law, section 361, where it is said:

"To warrant a recovery where a premium is not paid when due, it is necessary to prove (1) the course of dealing between the insured and the insurer in reference to the acceptance of overdue payments amounting to a custom or habit; (2) that by reason of this course of dealing, the insured was justified in believing that the insurer would not insist on a forfeiture for failing to pay subsequent premiums; (3) that the insured believed he could postpone the payment of premiums without risking a forfeiture; and (4) that he acted on this belief, and therefore did not pay the premium at its maturity."

The question therefore is, did the insurer by its course of dealing with the insured establish a custom of accepting payments of premiums after the expiration of the thirty-one days of grace and thereby induce the insured to believe that it would not forfeit the policy upon his failure to pay the premium within that time? The evidence on that subject shows, as we have pointed out, that only on a few occasions did the insurer accept the payment of overdue premiums without requiring a certificate of health and a revival of the contract of insurance; and furthermore, that the circumstances of those acceptances were exceptional in that in every instance the insured, before the expiration of the thirty-one days of grace, had taken steps to pay the premium. It is in proof that every time there was a forfeiture of the policy for the nonpayment of a premium, as on March 4, 1913, the insured applied for a reinstatement of the policy and furnished a health certificate. No such application was made after March 4th. Hence there is not only no custom supporting his position in reference to the effect of the forfeiture of March 4th, but there is in fact no single precedent to sustain it. Besides, an occasional indulgence under exceptional conditions cannot effect the establishment of a custom or abrogate the plain provisions of a contract. It therefore seems to us, under this view of the evidence, that the insurer had not established a custom of accepting premiums after maturity dates without requiring health certificates and a revival of the contract; and accordingly on that issue the trial court properly directed the jury to find for the defendant.

But it is said that for a number of years the company permitted the insured to revive his policy, after it had lapsed for nonpayment of premiums, by permitting him

to furnish a health certificate, approving it and reinstating the policy, and on that ground the case should have gone to the jury. It may be conceded that the evidence is such as would authorize the finding of the existence of such a custom if that were an issue in the case. But the difficulty confronting plaintiff is the question, is not here, because the insured never requested a reinstatement of the policy after March 4, 1913. Assuming, therefore, that it would have been the duty of the insurer, upon application made for a reinstatement conformable to the requirements of the policy, to consider the application and to reinstate the policy, it nevertheless was not its duty so to do in the absence of an application therefor, and no such application was made. It is insisted, however, that it was unnecessary to make such an application because the policy was wrongfully canceled. This contention is founded on the theory that the insured had advised the company that he had lost or misplaced his policy and was demanding that the company furnish him a copy, and, as a reasonable man, did not believe that he would be required to pay the next premium until he had obtained a copy of the policy. Undoubtedly the insured knew that a premium was due on February 1, 1913. There was no provision in the policy for the suspension of the payment of premiums in the event that the insured lost his policy, and there is nothing in the record to indicate that the loss of the policy prevented or interfered with the payment of the premium due on February 1st. Neither have we been able to find anything in the correspondence between the insured and the company from which he could reasonably infer that the payment of premiums would not be required pending his effort to procure a copy of the policy. If the policy had been wrongfully canceled the insured would not have been required to tender the premium due on March 4, 1913, nor to make a tender of any other premiums thereafter, nor would it have been necessary for him to apply for a reinstatement of the policy. The numerous authorities cited by plaintiff on this point, including the Kentucky cases of Western & Southern Life Ins. Co. v. Giltnane, 157 Ky. 275, and Inter-Southern Life Ins. Co. v. Duff, 184 Ky. 227, so hold. But they do not reach the question, for as we view the evidence the policy was not wrongfully canceled, and consequently it was the duty of the insured if he desired a reinstatement of it to make application therefor. Not having made such an application, the

plaintiff will not be heard to say that a recovery should be had merely because a custom existed by which the policy might have been reinstated.

In discussing the question just disposed of, we have said there is nothing in the correspondence between the parties to the contract from which the insured could reasonably infer that, pending the negotiations for a copy of the policy, the payment of premiums would be suspended. We may add there is no evidence in the record from which the inference could be reasonably drawn. It follows that there was no evidence for the jury on the second issue, and the directed verdict on that issue was also proper. The judgment is affirmed.