## SECURITY TRUST CO. et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 218.

District Court, E. D. Kentucky.

Feb. 1, 1943.

Robert H. Hays and W. E. Darragh, both of Lexington, Ky., for plaintiffs.

Wm. Marshall Bullitt, Leo. T. Wolford, Eugene B. Cochran, and Bullitt & Middleton, all of Louisville, Ky., for defendant.

FORD, District Judge.

On Monday, August 5, 1940, Stanley W. Gault was found dead in his office at Lexington, Kentucky, under circumstances indicating suicide.

This suit is for the recovery of $20,000, the stipulated indemnity under the terms of two certain insurance policies which were issued by the defendant upon the life of Mr. Gault on August 20, 1938. The plaintiff is the designated beneficiary of both policies.

Each policy contains the following provisions:

"A grace of thirty-one days shall be granted for the payment of each premium after the first, during which days of grace the insurance shall continue in force.

\*    \*    \*    \*    \*

"If any premium be not paid before the end of the days of grace, then this Policy shall immediately cease and become void, \* \* \*."

It is undisputed that quarterly premiums which fell due on May 30, 1940, the last premiums which matured prior to the death of ·Mr. Gault, were neither paid nor tendered before his death nor within the grace period provided by the original contracts or any extension agreements. The policies had not been in force long enough to have any cash surrender value available for paid up or extended insurance.

The questions presented are: (1) Whether the defendant, by its acts or course of conduct, in respect to the premiums in question, waived its right to rely upon the provisions of the policies that they should lapse for failure to punctually pay the premiums; and (2) whether the defendant is estopped to take advantage of the default in payment of the premiums by reason of its previous course of dealing with Mr. Gault in such matters.

The material facts are not disputed. The controversy lies in the legal effect to be attributed to the acts and conduct of the parties.

On June 29, 1940, which was within the grace period allowed for the payment of the premiums due May 30, 1940, Mr. Gault signed writings addressed to the defendant Company requesting an extension of time to pay the premiums on each of the policies and in consideration thereof proposed to pay the required extension fees. The requests were granted by the Company and the fees paid. By these agreements the grace period for payment of the premiums on each of the policies was extended for 31 days after June 30, 1940. Each exten-

sion agreement provided that the extension fee "shall in no event be considered as a payment in full or in part of said premium * * * but that if said premium ˙* * * be duly paid within the period permitted above, said extension fee shall be returned by the Company." This provision, of course, made the amount of the extension fees available for his use in payment of his premiums if he paid the remainder within the time stipulated. The extension agreements also contained the provision "that if * * * said premium * * * with interest at 5% * * * be not paid on or before June 30, 1940, (herein called the 'end of the extension period'), or within 31 days thereafter, said policy shall thereupon cease, lapse and become void as of said due date, * * *"

To avoid lapse of the policies, it thus became necessary for the premiums to be paid on or before July 31, 1940.

On Tuesday, July 30, 1940, Mr. Gault delivered to the defendant at its Lexington office checks for an amount which, together with the extension fees, covered the amount of the premiums and interest. He was given a receipt which provided that the checks so delivered should not constitute payment of the premiums until they were honored on presentation. It is not contended by the plaintiff that the checks were unconditionally accepted as payment of the premiums. In this respect the parties have stipulated that "The Company would accept checks given for the purpose of paying premiums, in the ordinary course of its business, subject to the condition that such checks would be paid when presented at a bank." The checks referred to were drawn upon the plaintiff, Security Trust Company, and were signed "Mrs. E. L. Gault by S. W. Gault". The defendant deposited the checks with the First National Bank of Lexington and in due course they were presented for payment to ·the plaintiff bank. Payment was refused for lack of sufficient funds and the checks returned. The defendant's Lexington office was notified and, after communication with Mr. Gault by telephone, the checks were again presented to the plaintiff for payment and payment was again refused and the checks returned to the First National Bank. While the evidence is not explicit as to the details of the conversation with Mr. Gault, it is quite obvious from the circumstances that the second presentation of the checks was at his request. It ap-

pears from the testimony that the second presentation and return of the checks took place not later than Saturday, August 3. On the following Monday morning, August 5, Mr. S. A. Wallace, the plaintiff's secretary-treasurer, went to Mr. Gault's place of business between 9:30 and 10 o'clock and found him dead. Apparently he was the first to discover his death. Knowing that the premium checks had been returned unpaid, he returned to the plaintiff bank, secured sufficient money to pay the checks, went to the defendant's Lexington office and tendered in cash the amount necessary to cover them. In the mean time, during business hours Monday morning, the defendant's cashier had been notified that the checks had been returned unpaid, had received information of the death of Mr. Gault and had procured the return of the checks from the bank. The tender made by the plaintiff was declined.

It is neither shown nor claimed that the death of Mr. Gault occurred during the period of indulgence to which the defendant assented, and the evidence discloses no reasonable excuse for the default.

■ The defendant contends that the policies lapsed for nonpayment of the premiums. The plaintiff contends that the act of the defendant in presenting the checks for collection a second time, after first notice of dishonor, "constituted an election on its part to accept.the checks as an evidence of debt so as to preclude forfeiture of the policy on the ground of nonpayment of the premium" under the general rule prevailing in Kentucky and elsewhere that since forfeitures are not favored by the law, slight evidence of an unequivocal act by the insurer demanding payment of a premium after it is past due, is sufficient to constitute waiver of the policy provisions in respect to forfeiture for nonpayment. New England Mutual Life Insurance Company v. Springate, 129 Ky. 627, 112 S.W. 681, 113 S.W. 824, 19 L.R.A.,N.S., 227.

■ The Springate case and other Kentucky cases, which apply the rule relied · upon by plaintiff, rest upon the fact that an unequivocal demand for the payment of a past due premium as a subsisting debt was shown to have been made by the insurer. They hold such unequivocal action to be so inconsistent with the forfeiture provisions of the contract as to constitute a waiver of them. The facts of this case do not bring it within that rule. The mere

presentation of the checks to the bank upon which they were drawn, a second time, under the circumstances herein disclosed, was not a demand or effort to enforce their payment as a debt or to treat them as such. It amounted to nothing more than an act of grace or indulgence affording the insured an opportunity to fulfill the condition upon which the checks if paid were to be treated as timely payment of the premiums.

Such an act of mere indulgence did not abrogate the conditions upon which the checks had been accepted nor did it imply recognition of them as evidence of subsisting indebtedness so as to constitute a waiver of forfeiture in the event they were not paid accordingly. Hammond v. Sun Light Insurance Company, 251 Ky. 147, 149, 64 S.W.2d 477.

The plaintiff further contends that in previous transactions between the parties the defendant customarily and habitually "carried over the payment of the premiums beyond the period of grace and continued the policies in force, receiving payments at subsequent dates after the period of grace had expired," to such an extent as to induce the insured to believe that he could postpone payment of premiums without risking lapse of his policies and by reason thereof the defendant is estopped to insist or rely upon the contract provisions in respect to lapse of the policy for failure to punctually pay the premiums in the instant case.

■ The rule upon which the plaintiff relies was stated in Brown v. Fidelity Mutual Insurance Company, 197 Ky. 430, 435, 247 S.W. 47, and in Fidelity Phenix Fire Insurance Company v. Flora, 235 Ky. 439, 443, 31 S.W.2d 699, 701, thus: "To warrant a recovery where a premium is not paid when due, it is necessary to prove (1) the course of dealing between the insured and the insurer in reference to the acceptance of overdue payments amounting to a custom or habit; (2) that by reason of this course of dealing, the insured was justified in believing that the insurer would not insist on a forfeiture for failing to pay subsequent premiums; (3) that the insured believed he could postpone the payment of premiums without risking a forfeiture; and (4) that he acted on this belief, and therefore did not pay the premium at its maturity."

■ The evidence in respect to the prior course of dealing between the parties may be briefly summarized as follows: Mr. Gault was engaged in the coal and lumber business. In addition to the two policies involved in this case, he carried with defendant sixteen other insurance policies on his life aggregating $110,000. The maintenance of this large amount of life insurance was a heavy drain upon his finances, and it was his regular practice to delay the payment of his premiums until near the expiration of the grace periods. On the last day or next to the last day of the grace periods as stipulated in the original contracts or special extension agreements, he would either pay his premiums in cash or deliver checks to cover them. Premium checks were usually paid upon presentation to the banks upon which they were drawn. Occasionally, however, they were returned unpaid for lack of funds, and in such cases, upon notice, Mr. Gault would either take them up with cash or request their return to the bank and make provision for their payment upon presentation.

In all the many transactions involving the payment of premiums on Mr. Gault's numerous policies, there was no instance of the defendant Company accepting or of Mr. Gault tendering payment of a premium, as such, in cash or by check, after the expiration of the grace period as provided by the original or an extension agreement.

It is true that numerous premium checks which were timely delivered, by reason of the necessity for clearance through the banks, were not actually paid within the grace period, but such payments were properly treated as having been made as of the date of delivery of the checks, and such instances do not evidence a custom or practice to accept overdue premium payments within the meaning of the rule to which reference has been made.

The relatively few instances when checks, having been dishonored on first presentation, were promptly paid in cash or at the request of Mr. Gault were again cleared through the bank and paid, fall far short of establishing a custom or habit in that respect.

It would be a startling innovation in the law of insurance to hold that such slightly indulgent conduct, as that occasionally followed by the defendant in this case, is not permissible without surrender or abrogation of vital contract rights.

Moreover, there is nothing to show that the insured believed he could further postpone the payment of the checks without risking lapse of his policies or that he acted on such belief or with such intention. For all we know, his failure to meet the checks may have been the result of his deliberate decision to allow the policies to lapse and save further payment of premiums in order to lighten the heavy insurance load he was carrying or for some other reason.

After having twice declined to pay the checks during the life of Mr. Gault, the effort of the plaintiff to save the situation by tendering payment after it discovered that he was dead, contributed nothing to the restoration of plaintiff's rights under the policies. It was like trying to place a bet on the winner after the race was run.

■ "Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party, on which to base a reasonable excuse for the default." Thompson v. Insurance Company, 104 U.S. 252, 260, 26 L.Ed. 765.

From the conclusions herein stated, it follows that plaintiff's claim under the policies in suit must be denied.

Let findings of fact, conclusions of law and judgment in conformity herewith be submitted for entry.