**MUTUAL FIRE INSURANCE COMPANY OF COVINGTON, Kentucky, a Corporation, Appellant,**

v.

**Martha E. CANDLER et al., Appellees.**

Court of Appeals of Kentucky.

May 22, 1959.

As Modified on Denial of Rehearing
Sept. 25, 1959.

Viley O. Blackburn, Somerset, F. Selby Hurst, Lexington, for appellant.

Fritz Krueger, Russell Jones, Somerset, for appellee.

MOREMEN, Judge.

Appellees, Martha E. Candler and Joyce Gadberry, obtained judgment for the sum of $10,000 on a fire insurance policy issued by appellant, Mutual Fire Insurance Company.

Appellees operated a rooming house in Somerset, and they were accustomed to doing business with C. J. P. Carver, an insurance agent of that city.

On January 12, 1951, Carver sold and had issued to appellees a policy written by appellant company. This policy was for a term of three years. Carver personally delivered it to appellees who thereupon paid the premium in a lump sum.

Sometime prior to the expiration date of the policy, (January 12, 1954), Carver was notified by appellant's Lexington office that the policy was due to expire by its terms. Carver by letter requested a policy in the sum of $10,000, "for one year, with annual extension option." The Lexington office issued the policy (which is the basis of this action) and sent it to Carver.

On or before January 12, 1954, Carver personally delivered this policy to appellee Candler; told her the policy was on the five-year renewal or extension plan, and collected the annual premium in cash.

Following the first sentence in the policy is this designation of its character, "5 yr. Annual Renewal Plan—1st yr." A description of the perils assured against and the amounts of coverage appear next. Then we find this covenant:

"In Consideration Of The Provisions And Stipulations Herein Or Added Hereto

And of the premium above specified, this Company, for the term of One year from January 12, 1954 at Noon (Standard Time) to January 12, 1955, at Noon (Standard Time) at location of property involved, to an amount not exceeding the amount (s) above specified, does insure Mrs. Martha E. Candler and Mrs. Joyce Gadberry."

A rider annexed to the policy reads:

"This policy may be renewed annually for Four (4) successive years by the issuance of a properly counter-signed renewal certificate and the payment of eighty per cent (80%) ( ) of the annual premium per annum, provided that, the premium and rate set forth in this policy may be changed by the Company during the term thereof, or upon renewal, in event of any change in the legal rate.

"Nothing in this endorsement shall be construed to waive any of the provisions of the policy to which this endorsement is attached or the cancellation privilege of either the insured or this company."

Later in the year, Carver was notified by the Lexington agency of the impending extension or expiration date (January 12, 1955) and he requested the issuance of an Annual Extension Endorsement. It was delivered to appellee Candler by him and she paid the premium in cash. The second extension date was January 12, 1956, and the actions of the various persons before and after that date were the same as those just described.

C. J. P. Carver had been a soliciting agent for appellant since 1950. The last of the annual licenses which appellant had caused the State to issue to Carver, designating him to be its agent, expired on November 1, 1956, and was not renewed. He was thereafter disqualified to act as agent for the insurance company. No replacement was appointed. Thereafter, Carver did not receive notices from the company concerning expiration or renewal dates. It was his custom, however, to keep a personal record of such dates.

The appellees were not notified by the insurance company that Carver no longer represented it. Carver did not notify them that he was no longer an agent for the company, neither did he remind them of the approaching renewal date or take any action to extend the insurance coverage. So January 12, 1957, came and passed without anyone making a move to continue the fire coverage on the building owned by appellees.

On March 13, 1957, the building was destroyed by fire.

The insurance company refused to pay the loss and the appellees filed complaint in which it was alleged that at the time the policy was issued, appellees had notified the insurance company, through its authorized agent, that they desired to have the policy extended through the whole period of five years and that the insurance company, through its agent, agreed that they would keep said insurance in full force during said entire period of five years; that the company had renewed the insurance policy on two occasions under this agreement, but later had failed, without notice to appellees, to extend said policy on January 12, 1957, and that appellees had relied on the promise of appellant to keep said insurance in full force and effect and did not know the policy had not been extended on January 12, 1957, for an additional year. It was averred that appellant was estopped from denying that the policy was in full force and effect.

At the trial and at the conclusion of all the testimony offered by both parties, the court peremptorily instructed the jury to find for the appellees.

The trial court, in directing the verdict, was of opinion that the custom of the agent, over a period of years, to notify appellees of premium dates and to cause the policy to be renewed, coupled with the

fact that the insurance company terminated all authority of its agent without notice to the assured, was sufficient to invoke an estoppel, particularly when at the inception of the insurance contract, Carver had made a statement that may have lulled appellees into a false sense of security. This latter incident, as described by appellee Candler was:

"Q. What did you say to Mr. C. J. P. Carver after you paid him the premium and the policy had been delivered? A. I said, Mr. Carver, you folks take care of this for me, don't let me lose it. I have so much to look after and to take care of, I says, I'm leaving this all in your hands for my care in the company, for him to watch after it, him and his company.

"Q. To do what? A. To do that for me. I had so much to look after, I was afraid it would slip my mind and he says, 'there is no worry.'"

It must be noted that the policy here involved is for a specific period of one year, subject to be renewed annually for four successive years at a payment of eighty per cent of the annual premium. Even the amount of the premium may be changed by the company in cases where there is a change in the legal rate. This policy is quite different from one issued for a period of five years with the provision that the premium may be paid in annual installments during that period, for there the term of the insurance is fixed. The policy definitely provides for terms of one year with annual renewal privileges.

 The opinion in American Cent. Ins. Co. v. Hardin, 148 Ky. 246, 146 S.W. 418, 419, is authority for the rule that recovery may be had upon a parol contract of insurance if such contract is specific as to the identity of the property; the risk; the amount of coverage; the rate of premium; the duration of the risk, and the identity of the parties. The opinion also makes it clear that a recovery may not be had "upon a custom of the agent of appellant company to renew without further notice or request policies of its patrons as they expired." To the same effect is the opinion in Gresham v. Norwich Union Fire Ins. Society, 157 Ky. 402, 163 S.W. 214, 216, wherein it was written: "A mere custom to renew will not of itself bind the company. There must be a contract to renew." See also Campbell v. Aetna Ins. Co., Ky., 269 S.W.2d 292. We are concerned, therefore, only with the question of whether there was a sufficient parol contract of renewal.

Appellees argue with force that since the original policy was issued under the "5 yr. Annual Renewal Plan—1st yr.," all of the essential elements, outlined above, were covered fully by that policy which provides for a continued life of five years, and this suit is not one to recover for the breach of an oral contract to renew in the future, but is one based on a written contract which gave insured the privilege of extending it for four successive years.

An examination of the Renewal Rider, quoted above, discloses that the policy may be renewed by the issuance of a properly countersigned renewal certificate, and, if that is done and the legal premium in the meantime has not been changed, the insured may, under each renewal, receive a twenty per cent reduction in the amount of the premium paid the first year. But we cannot read into this provision any covenant that either party may force a renewal after the original term of one year has expired. The policy itself contains a standard cancellation clause which permits either party to terminate the contract during the first year.

We believe this rider was not intended to deal with renewal procedure, but only with premium rates after there had been in fact a renewal. It follows that we cannot accept appellees' argument that the original insurance policy supplies the necessary elements of a parol contract of insurance and is specific as to the identity of the property, the risk, et cetera, be-

cause that same thing could be said about every policy of insurance that is issued for a term of one year, regardless of whether anything is said about renewal privileges.

The cases we have cited above, if such were the theory of law, could have been turned upon the idea that the original contract supplied all the necessary elements. We, therefore, find this case no different from the ordinary one which involves a policy that has no rider such as was attached to the policy here, and, when we view the testimony given by appellee Candler in the light of these principles, we find it lacks the substance to supply the necessary elements of a parol contract of insurance.

In St. Paul Fire & Marine Insurance Co. v. Trustees of Christian Church of Somerset, 259 Ky. 276, 82 S.W.2d 315, 316, many instances were discussed where an agent had the broad power to make immediate agreements to renew an expiring policy if it was done within a reasonable time of the expiration date. It was said:

"There is a clear distinction between such a contract of insurance in praesenti and a contract to insure in the future. In the one case, the actuaries of the insurance company have a definite basis upon which to compute their risk and to charge a premium commensurate with the risk. The gamble under the law of probabilities is reduced to a minimum. The insurance company knows the extent of its risk and may provide adequate reserves to cover its possible liabilities. On the other hand, to imply authority in every insurance agent to make agreements to renew months ahead would upset all hope of mathematical calculation as to probable liability." And it was held that an insurance agent was not authorized to make an oral contract which would be binding on an insurer to renew a fire policy when that agreement was made nine months before the old policy expired. In the case under discussion the alleged agreement was made several years before the policy finally expired.

The trial court relied upon Continental Insurance Co. of New York v. Browning, 114 Ky. 183, 70 S.W. 660, and Blackerby v. Continental Insurance Co., 83 Ky. 574, 7 Ky.Law Rep. 653. But each of those cases involved a definite term of five years and the fire occurred before the expiration of the term. It was a question of forfeiture of insurance for failure to pay an installment premium when due, rather than a question of renewal of insurance, and the cases are easily distinguishable.

We have concluded that the court erred in granting a directed verdict for appellees and in failing to sustain appellant's motion for a directed verdict.

The judgment is therefore reversed, and the trial court is directed to enter judgment for the appellant in conformity with the motion of the appellant in the trial court for a judgment notwithstanding that verdict.