The HOME INSURANCE COMPANY OF NEW YORK, Appellant,

v.

Lewis CAUDILL et al., Appellees.

Court of Appeals of Kentucky.

March 22, 1963.

Pat Rankin, Stanford, for appellant.

· Cabell D. Francis, Stanford, for appellees.

**168**

STANLEY, Commissioner.

On August 3, 1954, the Home Insurance Company of New York through its local agent at Stanford, O. M. Yeary d/b/a O. M. Yeary Insurance Company, issued a fire insurance policy to Lewis and Serilda Caudill, covering a farm dwelling house and its contents and a barn. The amount of indemnity for the house and contents was $3,000. The term was for five years. The premium was $148.25, payable in five installments of $29.65. Yeary collected one-fifth of the premium, $29.65, when the policy was issued. For the balance the insured executed a promissory note, payable in installments of $29.65 on the first day of August, 1955, 1956, 1957 and 1958. Fire destroyed the property on July 31, 1958. The company denied liability on the ground that the premium installment due August 1, 1957, had not been paid; and under the terms of the policy, as well as of the note, the insurance protection was suspended, and the company was not liable for loss during such default.

Two issues evolved: (1) whether the Caudills had, in fact, paid the premium due August 1, 1957, to Yeary through his office; and (2) if Yeary received the payment, whether he did so as the company's agent or as Caudill's agent for forwarding it to the company at its office in Chicago, where the contract provided the premium should be paid. And there is another question that demands consideration, namely, a waiver of default in prompt payment of that installment.

The trial court submitted the question of fact of payment to a jury and ruled as a matter of law that if the premium was so paid to Yeary, he received same as the company's agent. The verdict was for the plaintiffs, and judgment was entered in accordance therewith and with the ruling of the court.

■ We find the verdict to be sustained. It was the jury's province to accept the

Caudills' evidence over Yeary's contradictory evidence.

The question is as to Yeary's authority as agent of the company to accept the premium payment for and in its behalf. The trial court based his ruling upon the course of dealing in the matter of paying and receiving previous installments of the premium and the acquiescence and ratification on the part of the insurance company, for it accepted other remittances made directly by Yeary and never at any time before the fire questioned his authority, or, apparently, treated the policy as suspended or canceled.

The company has relied on the letter of the contracts—policy and note—and the insureds' failure to observe it strictly.

The note recited the insureds' promise to pay the four installments to the company "at its office in Chicago or New York." It also contained the agreement that in case any one of the installments should not be paid when due, the company would not be liable for loss during such default and the policy would lapse until payment was made to the company "at its office in Chicago or New York."

The policy contained the provision, "Payments of notes or installments must be made to the said insurance company at its Farm Department Office, as specified in the note, or to an authorized person having possession of such note or obligation for collection."

It is admitted that the agent, Yeary, had authority to collect, and that he did collect, for the company the initial installment of the premium when the policy was issued August 3, 1954. He had charged that premium to Caudill's account with his agency and remitted the amount to the company's general office on September 30, 1954, but he did not collect from Caudill until December 28, 1954.

The 1955 and 1956 installments, at Caudill's request to take care of the premium (notice of maturity, it appears, having been

received by Caudill), were paid in cash to Yeary, and he made the remittances by his checks. This was done, as Yeary maintained, as a personal favor to Caudill, since he was under no obligation and had no authority to collect the premium.

Concerning the crucial installment due August 1, 1957, the evidence as to the actual payment to Yeary is in dispute. Caudill's testimony is that on August 5, 1957, Yeary came to him while he was sitting in a car in Stanford and asked him to pay the premium, saying that he had sent in his personal check. Cash was promptly taken by Mrs. Caudill to Yeary's office and paid to his clerk. This transaction was denied by Yeary and his clerk. As stated, the issue was decided by the jury in favor of the Caudills. But there is more. Caudill and his wife testified that on November 30, 1957, Yeary came out to their home and requested that he be paid his money, repeating that he had sent in his check for the premium. Although Caudill insisted the premium had been paid, he testified that after some dispute he gave a $20 check to Yeary (a photostatic copy of which was filed in the record), and the balance of $9.-65 Caudill claimed was paid by his son at Yeary's office, for which he obtained a receipt, which he says was destroyed in the fire. Yeary's version of this is that the payment was made in partial adjustment of an account for premium on an automobile liability policy and a guardian's bond. His evidence is more plausible.

Concerning the installment due August 1, 1957, Yeary testified that about August 15, 1957, he received notice from the Chicago office that the installment had not been paid, and about the 15th or 20th he went to see Caudill about it. Caudill told him he didn't have the money and could not assure him when he would have it. He then told Caudill he was unable to pay it for him, and after that, said Yeary, "I just lost sight of it."

When Yeary heard about the fire which destroyed the property, he went to see the Caudills, who were occupying a neighbor's house. Yeary testified he assured them they didn't have anything to worry about "if their policy was in order." The Caudills testified he told them, "It's a good thing you had insurance with us," and not to worry too much, as it wouldn't be but a few days until they had their money.

A few days afterward, Yeary and W. G. Satterly, the company's adjuster, went to see the Caudills and told them they would have to have an itemized list of the destroyed household contents. There is no contradiction about this. Yeary testified, "We didn't know the policy status at that time." Caudill further related that the next day he met Yeary on a road and he asked him for "another year's premium." Caudill replied he would have to go get the money, and went to his employer and got a check for $14 owing him and turned it over to Yeary and paid the balance to him in cash, for all of which he was given a receipt. He filed an original receipt of the Yeary Insurance Agency dated "8/1/1958" for $29.65, bearing the notation, "Policy #93-43-705," which is the policy involved in the lawsuit. Yeary's testimony is that Caudill came to his office and paid the money.

Remittance of this installment payment was made by Yeary to the Chicago office on a form furnished by the company, which is stamped, "Received, Aug. 5, 1958." This, it will be noted, was after the fire.

Thomas L. Paul, manager of the defendant's Chicago accounting department, testified concerning the practice or mode of operation of the company with respect to installment premium remittances. It is that fifteen days before an installment is due, notice is mailed to the insured, advising him of the approaching maturity. In the event remittance is not received, a notice to that effect is mailed to the company's local agent and it becomes the agent's duty to collect the premium. The witness testified that his records indicated notice had been sent Caudill for the 1955, 1956 and 1957 installments but none for 1958 because the policy

was suspended and had been cancelled. Thus, it is admitted that the local agent had authority to collect the first part of the premium on these policies and to collect and receive past due installments. This is not in accord with the policy provision that installments must be paid to the Farm Department Office (which was in Chicago) or an authorized person who had possession of the note for collection.

In summary: Yeary, as agent of the company, had the express authority to collect the first payment of the premium and to collect past due installments of the note, although the policy and note provided the installments should be paid at the Chicago office or to "an authorized person having possession of such note or obligation for collection." There is no claim that Yeary ever had possession of the note after it was sent into the office when the policy was issued. Yeary admittedly did receive payments of the 1955 and 1956 installments from Caudill and did remit the payments by his checks, and same were accepted by the company as being payments by the insured. While the installment due August 1, 1957, was not remitted by Yeary (because he claimed it was not received), yet, he admits that under authority he tried to collect that installment fifteen or twenty days after maturity but was unsuccessful.

■ The course of dealing with the insured in relation to the installment payments will not permit the company to say that failure of the insured to remit the August 1, 1957, installment directly to the Chicago office was no payment at all. Its course of dealing with these policyholders with respect to the payment of previous premium installments amounted to a custom or habit justifying the insured in believing that his payment to the local agent as being to one having authority was sufficient and binding on the company by the agent's acceptance thereof. Couch on Insurance, 2d, §§ 26.57, 26.58; 29A Am.Jur., Insurance, § 1096; Brown v. Fidelity Mutual Life Insurance Co., 197 Ky. 430, 247 S.W. 47; Fidelity

Phenix Fire Ins. Co. v. Flora, 235 Ky. 439, 31 S.W.2d 699; Cf. Westchester Fire Ins. Co. of New York v. Gray, Ky., 240 S.W.2d 825, 33 A.L.R.2d 608.

So much on the question of Yeary's authority to receive the payment of the installment due August 1, 1957, which prevented lapse of the policy before the fire July 31, 1958.

There are other reasons why the insurance company may not avoid liability on the policy, even if its contention as to absence of its agent's authority to receive payment before or after due date of the 1957 installment should be sustainable.

■ The policy was never canceled in accordance with its provisions, which were, in part, to give the insured five days' written notice of cancellation. It provided that the company should not be liable for any loss that might occur while any installment of the premium remained past due and unpaid. The effect of such provision is to suspend the policy during the period of delinquency. Fidelity Phenix Fire Ins. Co. v. Flora, 235 Ky. 439, 31 S.W.2d 699. Where there is such suspension, the payment of an overdue installment automatically revives the policy back to the due date of the installment. 45 C.J.S. Insurance § 581.

■ It is of importance that after Yeary knew about the fire, he collected an installment of the premium note and remitted it to the company's Chicago office. It is well settled that an insurance company cannot treat the contract as valid for the purpose of collecting the premium and invalid for the purpose of paying the indemnity. Kentucky Live Stock Ins. Co. v. Stout, 175 Ky. 343, 194 S.W. 318; Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S.W.2d 931; Cheek v. Commonwealth Life Ins. Co., 277 Ky. 677, 126 S.W.2d 1084.

It is said in 29A Am.Jur., Insurance, § 1089:

"As a general rule, the acceptance by an insurance company of the payment

of a premium note after the maturity of the note is a waiver of a forfeiture of a policy caused by the prior default in the payment of the note, even though such payment is received after a loss covered by the policy and the policy provides for a suspension of liability during default in the payment of premium notes."

We have had a number of cases involving the same or similar provisions of policies of the appellant.

It is admitted that fifteen or twenty days after the August 1, 1957, installment was due Yeary, within his express authority, made an unconditional request for payment thereof. In Walls v. Home Ins. Co., 114 Ky. 611, 71 S.W. 650, 102 Am.St.Rep. 298, it was held that a condition contained in a policy and notes, that the policy should lapse and the company not be liable for loss during default in the payment of a note, was waived where the insurance company not only retained the note after it was due but also unconditionally requested payment in full for the current year. In Morgan v. Home Ins. Co., 216 Ky. 589, 288 S.W. 321, after fire had destroyed the property, the company's local agent mailed the insured's check for a past due installment of the note to the company's Chicago office, but the check was promptly returned with the cancelled note. While we held there had been no waiver of the default, upon citation of numerous previous cases we observed, "In this state the rule that such stipulation may be waived by the insurer's retention of the note and making an unconditional demand for payment is equally well settled." In Home Ins. Co. v. Westerfield, 266 Ky. 494, 99 S.W.2d 464, the decision turned on the fact of whether the company had written a letter containing an unconditional request for payment of a past due installment of the premium note. The company denied having written such letter, and the insured claimed he had received it but it was lost. We held proof of its loss was not sufficient to authorize the admission of secondary evidence as to its contents and that the trial court should not have submitted the case to the jury. However, in the course of the opinion we noted that "a less imperative notice" than a request to remit an installment of the premium without delay which said nothing concerning the suspension of the company's liability during the time the premium remained unpaid had been held in several cases cited to be an unconditional demand for payment.

The conclusion of the whole case is that the company is liable on its contract because (1) the jury having found the August 1, 1957, installment was paid to the company's local agent, the course of dealing, coupled with the agent's express authority to collect overdue payments, constituted an ostensible authority to receive the same; and (2) there was a waiver of prompt payment of that installment by subsequent actions on the part of the company and its agent.

The judgment is affirmed.