**STATE FARM FIRE & CASUALTY CO., Plaintiff,**

v.

**CONTINENTAL INSURANCE CO., Defendant.**

**Civ. A. No. C–83–0187 BG(S).**

United States District Court, W.D. Kentucky.

Jan. 25, 1985.

James D. Harris, Jr., Parker & Rudloff, Bowling Green, Ky., for defendant.

SILER, Chief Judge.

Chester and Sandra Whorbley owned a home, in Bee Springs, Kentucky, that was destroyed by fire. The Whorbleys had an insurance policy with the plaintiff, State Farm Fire and Casualty Company, and State Farm promptly paid the Whorbleys' claim on their loss. In the present case, State Farm seeks a pro rata contribution on the amount that it paid the Whorbleys from the defendant, Continental Insurance Company, alleging that the Whorbleys had additional insurance with Continental when the fire occurred. In response, Continental argues that its policy with the Whorbleys was terminated by their failure to pay a renewal premium.[1] Both parties have

---

**1.** Continental also argues that its policy was      cancelled by substitution when the Whorbleys

moved for summary judgment. For the reasons set out below, Continental's motion will be sustained and State Farm's motion will be denied.

The following facts are not in dispute. The Whorbleys did have an insurance policy with Continental that covered their home and their vehicles. This policy was effective from March 22, 1981, through March 22, 1982. The Continental policy could be renewed annually for up to five years. On March 23, 1982, Mr. Whorbley made arrangements to insure his property with State Farm. His policy with State Farm was effective from March 23, 1982, through March 23, 1983. The Whorbleys' fire loss occurred on March 24, 1982. This was during the term of their policy with State Farm, but two days after the expiration of their policy with Continental.

On the night of the fire, Mr. Whorbley called his State Farm agent, Billy Basham. The next day, Mr. Whorbley met with Basham and Basham advised him that State Farm was on the claim. After their meeting, Mr. Whorbley went to the office of the Continental agent, Rudd Kerr. Mr. Kerr was not in the office, but Mr. Whorbley told Kerr's secretary about the fire and asked her what he should do. She advised him to pay the premium, and Mr. Whorbley left his check with her. This check was forwarded to Continental's home office in Glen Falls, New York.

When Mr. Kerr returned, he arranged for an adjuster to investigate the fire. The adjuster found that Mr. Whorbley had obtained insurance with State Farm and included this information in his report. Mr. Whorbley stated that the adjuster told him that Continental would pay a part of his loss but the adjuster denies this.

At a time uncertain, Mr. Whorbley did receive the following notice from Continental:

We have not received the payment due in response to our recent billing of March 29, 1982. Unless payment is received promptly, your policy will not remain in force. If payment was recently made, please disregard this notice.

However, the record shows that Rudd Kerr also sent Mr. Whorbley a letter on March 29, 1982. That letter is set out below:

March 29, 1982

Dear Mr. Whobrey,

Chester I have been informed that you had taken insurance with State Farm, effective 3/23/82.

As you know I was out of town when you came in to pay your insurance premium, after the loss you had occurred; which we would have customarily taken and covered your loss; which you are aware that we had already sent an adjustor to inspect your loss.

However, since it was your intent to let this policy expire on 3/22/82 and had already taken out a $45,000 Homeowners HO 3 with State Farm your check is being returned to you by the Continental Insurance Company and there will be no coverage under this policy for your loss.

Sincerely,

Rudd A. Kerr

In addition, Continental returned Mr. Whorbley's check, on April 1, 1982, and advised him that his policy had expired, on March 22, 1983.

Mr. Whorbley testified that he did not intend to relinquish any rights that he might have had under his policy with Continental. However, his testimony clearly indicates that he had received a notice from Continental that his premium was due before the fire occurred, but chose not to pay it. He testified that he wanted to replace his Continental policy with less expensive coverage from State Farm, and he states

---

took out their policy with State Farm. *See Potomac Insurance Co. v. Motorist Mutual Insurance Co.,* 598 S.W.2d 461 (Ky.App.1980). But application of the doctrine of cancellation by substitution in Kentucky has been limited to cases that involve a temporary insurance binder. *Travelers Insurance Co. v. Motorist Mutual*

*Insurance Co.,* 649 S.W.2d 414, 415 (Ky.App. 1982). As this Court's ruling is based on the Whorbley's failure to renew their contract, it will not be necessary to reach the issue of whether their option to renew was analogous to a binder in the case at hand.

repeatedly that he did not intend to carry both policies before the fire. Even when his testimony is considered in a light most favorable to the plaintiff, it remains clear that Mr. Whorbley did not intend to renew his policy with Continental, when it expired on March 22, 1982.

State Farm's motion for summary judgment relies heavily on the case of *Home Insurance Co. of New York v. Caudill*, 366 S.W.2d 167 (Ky.1963). In that case, the plaintiff/appellee had an insurance contract with the defendant/appellant for a term of five years. The defendant's agent had collected ⅕ of the total premium and had issued a promissory note for the rest, which was payable in four annual installments. The plaintiff's property was destroyed by fire during a period when one of these installments was past due. After the fire, the plaintiff made the late payment on his note, but the defendant denied liability.

The appellate court affirmed a jury verdict for the plaintiff. The Court found that there was sufficient evidence that the defendant's agent was authorized to accept the late payment because of his prior course of dealing with the plaintiff. *Id.* at 168–169. The Court held that the acceptance of this overdue installment automatically revived the policy back to the date when the payment was due. *Id.* at 170. Thus, the policy was found to be effective at the time that the plaintiff suffered his loss.

However, the *Home Insurance* case is not apposite to the facts presented by the case at hand. In the present case, the claimants were not merely late in paying an installment that came due during the term of their contract. Instead, the Whorbleys failed to renew their contract with Continental, when the term of that contract expired, on March 22, 1983. Because of this distinction, the instant case is controlled by *Troutman v. Nationwide Mutual Insurance Co.*, 400 S.W.2d 215 (Ky.1966).

In *Troutman*, the claimant had purchased automobile insurance for a term of six months. This policy was renewable conditioned on advance payment of subsequent premiums. The claimant allowed the policy to lapse and was later involved in an accident. After the accident, the claimant made the payment that was required for renewal, to his insurance agent. The agent forwarded the claimant's check to the main office of the insurance company. The company cashed the check, but later mailed the claimant a refund check and advised him that his policy had been cancelled for nonpayment.

On appeal, the Court affirmed an entry of summary judgment for the insurance company. The Court distinguished the failure to make renewal payments from the failure to make an installment payment during the terms of the contract.

> The cases relied upon by the appellant (*Kentucky Live Stock Insurance Co. v. Stout*, 175 Ky. 343, 194 S.W. 318 [(1917)], and *Glens Falls Insurance Company v. Elliott*, 223 Ky. 205, 3 S.W.2d 219 [(1928)] holding that acceptance by the insurance company of the premium payment, with knowledge of a ground of forfeiture, estops the company from asserting forfeiture, are not in point because they deal with a situation in which the company is already contractually bound and is seeking to avoid the contract. In the instant case there was no contract when the premium check was cashed. For the same reason we find inapplicable *Home Insurance Co. of New York v. Caudill*, Ky., 366 S.W.2d 167, which holds that acceptance of late payment of a premium note estops the company from asserting a forfeiture of the policy for delinquency in payment of premium.

*Id.* at 217. The Court found that the company was not estopped from refusing to renew the policy, because the company had done nothing before the accident that would have led the claimant to believe that the policy would continue beyond its expiration date. *Id.* at 216–217.

As previously stated, the record indicates that the Whorbley's policy with Continental

expired on March 22, 1982. With regard to renewal, the policy provides as follows:

FIVE YEAR RENEWAL GUARANTEE

1. The company guarantees to renew this policy from year to year for a total period of five years from the original inception date stated in the Declarations, provided however that the company may decline to renew whenever it would be entitled to cancel this policy as provided in B2b(1), B2b(2) or B2b(3) above.

2. When the company elects not to renew this policy, it shall mail notice not less than thirty days in advance of its intention not to renew to the named insured and to any mortgagee or loss payee named in the Declarations, provided that the number of days notice shall not be less than that required by law; *but even though the company has not given notice of its intention not to renew, this policy shall terminate automatically on the expiration date stated in the Declarations if the insured has failed to discharge when due any of his obligations in connection with the payment of premium for this policy* of any installment thereof whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit. (Emphasis added.)

The policy does not provide for any grace period which would extend the time for payment of the renewal premium beyond the expiration date. The Whorbleys were not told that the renewal deadline would be extended by Continental or any of its agents, before the policy expired. Continental did send Mr. Whorbley a premium notice with regard to the March 29th billing. Mr. Kerr's letter, denying liability, does state that Continental would "customarily" have covered the loss. Mr. Whorbley did testify that the adjuster stated that Continental would pay part of the loss, and Mr. Kerr's secretary did accept Mr. Whorbley's check. But none of these events occurred before the expiration date of Mr. Whorbley's policy. Nor had they occurred before the fire on March 24, 1982. Mr. Whorbley testified that he intended to let his policy with Continental lapse. It cannot be said that he relied on these statements when he failed to make the payment that was required for renewal on March 22, 1982.

Regardless of whether Continental's agents were authorized to accept Mr. Whorbley's check, there is no evidence that Mr. Kerr, his secretary or the claims adjuster had any authority to waive Continental's right of non-renewal. In this regard, the Whorbley's policy provides as follows:

WAIVER PROVISION

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company. No provision, stipulation, or forfeiture shall be held to be waived by any requirement or proceeding on the part of the company relating to appraisal or to any examination provided for herein.

Continental did nothing, before the fire, that would have led the Whorbleys to believe that their policy would continue in force beyond March 22, 1983, if they did not make timely payment of their renewal premium. The premium notice that was received after the fire is not evidence that Continental had waived its right to refuse renewal, especially when payment was not tendered until after the loss occurred, and was subsequently returned. 13 J. Appleman, INSURANCE LAW AND PRACTICE § 7641, at 387–388 (1976). There is no evidence that Mr. Kerr's secretary was authorized to extend the term of coverage and no evidence that she represented to Mr. Whorbley that she could do so. *See Mutual Fire Insurance Co. v. Candler,* 327 S.W.2d 20 (Ky.1959). The policy had terminated by its own provisions when the Whorbleys failed to make their renewal premium on time. *See International Har-*

*vester Credit Corp. v. Wilkie,* 695 F.2d 231, 235 (6th Cir.1982). The brief time that Continental held the Whorbleys' check before returning it with a notice of termination did not cause the Whorbleys to suffer any detriment or to change their position in any way. Thus, there are no equitable considerations that would estop Continental from refusing to renew its policy. *Troutman v. Nationwide Mutual Insurance Co.,* 400 S.W.2d 215 (Ky.1966).

Rule 56(c) of the Federal Rules of Civil Procedure "authorized a summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial...." *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944). The burden of showing the absence of a genuine issue of material fact is on the moving party. *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 622, 93 S.Ct. 2469, 2479, 37 L.Ed.2d 207 (1973). In making a determination as to whether this burden has been met, all inferences drawn from underlying facts contained in materials submitted to the Court "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See also Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 527 (6th Cir.1962). "[A] trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment ... a party should not be deprived of an opportunity to fully develop his case by witnesses and a trial...." *S.J. Groves & Sons Co. v. Ohio Turnpike Commission,* 315 F.2d 235, 237 (6th Cir. 1963), *cert. denied,* 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963). "The summary judgment standard in this circuit is a stringent one." *Cincinnati Riverfront Coliseum, Inc. v. Cincinnati,* 556 F.Supp. 664, 666 (S.D.Ohio 1983). But an adverse party may not rest on its pleadings when a motion for summary judgment is made. Instead, its response must show that there is factual evidence in the record that creates a genuine issue for trial. FED.R.CIV.P. 56(e).

The Whorbleys' policy clearly indicates that the policy would terminate automatically if the renewal premium was not paid on time. The Whorbleys did not pay the premium on March 22, 1982, when it came due, and Mr. Whorbley's testimony clearly indicates that he intended to let the Continental policy lapse at that time. State Farm has not presented any evidence that would create a genuine issue of fact as to whether Continental was estopped from terminating or refusing to renew its policy. Accordingly, Continental's motion for summary judgment will be sustained by an appropriate Order of even date.