Chester TROUTMAN, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.

Court of Appeals of Kentucky.

March 4, 1966.

Wilbur Fields, E. Preston Young, Louisville, for appellant.

Robert C. Hobson and William D. Grubbs, of Woodward, Hobson & Fulton, Louisville, for appellee.

CULLEN, Commissioner.

Appellant, Chester Troutman, recovered judgment against Glynda Findley in the sum of $8,649.20 for damages sustained in an automobile accident. Troutman then brought action against appellee, Nationwide Mutual Insurance Company, seeking to recover the amount of the judgment from the appellee as alleged liability insurer of Mrs. Findley. The appellee denied that Mrs. Findley had any insurance with it covering liability on the Troutman claim. The trial court entered summary judgment against Troutman, from which judgment he has appealed.

The accident happened on January 11, 1963. In June 1962 Mrs. Findley had obtained from the appellee insurance company a *six-month* liability insurance policy which had an expiration date of December 21, 1962, but which made provision for renewal upon payment *in advance* of subsequent premiums for renewal. The policy contained no provision for a grace period or for notice of cancellation at the end of the policy term. However, it did provide that prior to the expiration of the policy term the company would mail to the policyholder a "notice of the premium required to renew."

In December 1962 the company mailed to Mrs. Findley the notice of premium required to renew, which was $31.10. She did not pay the premium because, she said in her deposition taken on motion for summary judgment, she "didn't have the money." On January 11, 1963, the day of the accident, Mrs. Findley notified the company's local agent of the accident, and he told her that he believed her policy had expired. Nevertheless he phoned a report of the accident to the district office of the company. On January 15 Mrs. Findley mailed a check to

the company in the amount of $31.10, bearing the notation "For payment on account of Pol. No. 63732023." The company cashed the check. Subsequently, on February 6, a few days after having received a telephoned inquiry from Mrs. Findley's husband, the company wrote her that the policy had been cancelled effective as of January 7. (The company had a voluntary practice of allowing a 17-day grace period, which practice, however, was not made known to the policyholders.) On February 25 the company mailed its check to Mrs. Findley in refund of the amount of her cashed premium check. She returned the check. The company then wrote her that they would deliver the money to her upon demand (which she never did make.)

The one immutable fact in this case is that the policy by its express terms expired on December 21, 1962. To give it new life so as to be effective on January 11, 1963, would require a finding either that there was in actuality a contractual renewal or that the company is estopped to deny that there was a renewal. No one contends that there was an express agreement of renewal, which leaves for consideration only the question of estoppel.

The policy did not provide for any grace period. Mrs. Findley was not told or in any way led by the company to believe that there was a grace period. She was not aware of the company's voluntary grace period. While there is some mention in the record of a final "red notice" customarily given before cancellation of a policy there is no suggestion that Mrs. Findley had any reason to expect such a notice, or even that such a notice was given on *termination* (as distinguished from cancellation) of a policy. The company did nothing before the accident to lead Mrs. Findley to believe that the policy would continue in force beyond December 21. The mailing of the premium by Mrs. Findley on January 15 was not prompted by anything done by the company to indicate that such late payment might be effective; on the contrary it was done in the

face of a statement by the agent that the policy was dead. The cashing of a check by the company and its delay in notifying Mrs. Findley of the termination of the policy and in refunding the amount of the check did not cause Mrs. Findley to change her position to her detriment or in any way create any equities in her favor. We find none of the elements of an estoppel in the facts of this case.

 The most that can be said against the company is that it was inept and somewhat less than brilliant in cashing Mrs. Findley's check after it had received notice from its agent of the accident on January 11. But the mere cashing of the check is not a basis for imposing a contractual liability on the company. See Carden v. Liberty Mutual Insurance Company, 278 Ky. 117, 128 S.W. 2d 169.

The cases relied upon by the appellant (Kentucky Live Stock Insurance Co. v. Stout, 175 Ky. 343, 194 S.W. 318, and Glens Falls Insurance Company v. Elliott, 223 Ky. 205, 3 S.W.2d 219) holding that acceptance by the insurance company of the premium payment, with knowledge of a ground of *forfeiture,* estops the company from asserting forfeiture, are not in point because they deal with a situation in which the company is already contractually bound and is seeking to avoid the contract. In the instant case there was no contract when the premium check was cashed. For the same reason we find inapplicable Home Insurance Co. of New York v. Caudill, Ky., 366 S.W.2d 167, which holds that acceptance of late payment of a premium *note* estops the company from asserting a *forfeiture* of the policy for delinquency in payment of premium.

There is no merit in the appellant's contention that the appellee's general denial of having any contract of insurance with Mrs. Findley was not a sufficient pleading, and that the appellee was required to plead as affirmative defenses the various legal arguments relied upon by it to show that the expired contract had not been revived.

Likewise there is no merit in the appellant's contention that the appellee, in order to treat as a tender its rejected offer to return the premium money to Mrs. Findley, was required to pay the money into court. No purpose would have been accomplished by such payment, because Mrs. Findley was not a party to the lawsuit.

The judgment is affirmed.