577 P.2d 245

Iwao TOMEOKA, Conservator of the Estate of Hiroshi Yamaguchi, a protected person, Appellant,

v.

MID–CENTURY INSURANCE COMPA-NY, a corporation, Appellee.

No. 13193.

Supreme Court of Arizona,
In Division.

March 13, 1978.

Rehearing Denied April 11, 1978.

Jennings, Strouss & Salmon by Stephen A. Myers, Phoenix, for appellant.

Jones, Teilborg, Sanders, Haga & Parks by James R. Broening, Phoenix, for appellee.

GORDON, Justice:

In 1972, Mid-Century Insurance Company issued a policy of automobile liability insurance to Maurice and Madaline Gilitiuk covering their 1967 Buick. The policy, number 88 1884 61 72, bore an effective date of February 29, 1972 and a stated expiration date of August 29, 1972. The Gilitiuks paid the premium for the entire six month term in February, 1972. It is undisputed that they did not pay any premiums on policy number 88 1884 61 72 or any other policy covering the Buick thereafter.

Although Mr. Gilitiuk testified at a deposition that he could not recall having received any notice of cancellation, there is evidence that, on October 19, 1972, Mid-Century mailed the Gilitiuks a notice informing them that their policy number 88 1884 61 72 had been cancelled on October 8, 1972, for nonpayment of premiums. The insurance company admits that this notice was not sent by certified mail.

On March 17, 1974, Mr. Gilitiuk, while driving the 1967 Buick, was in an automobile accident with Hiroshi Yamaguchi. On October 8, 1974, Iwao Tomeoka, the duly appointed conservator of the estate of Hiroshi Yamaguchi, filed a lawsuit against the Gilitiuks in Maricopa County Superior Court for personal injuries sustained by Yamaguchi in that accident. Soon after filing an answer to that complaint, the Gilitiuks tendered their defense to Mid-Century and demanded that the company assume liability for any judgment that might be rendered against the Gilitiuks.

On June 18, 1975, prior to the trial of the personal injury action, Mid-Century filed a declaratory judgment action against the Gilitiuks and Tomeoka praying that the court decree that Mid-Century had no duty to defend the Gilitiuks in the personal injury action and that Mid-Century was not obligated to pay for any judgment that might be rendered against the Gilitiuks in that action.

The trial court made a specific finding that no insurance coverage was afforded the Gilitiuks by Mid-Century for the March 17, 1974 accident and entered a summary judgment in favor of Mid-Century. We have taken jurisdiction of Tomeoka's appeal pursuant to Rule 47(e)(5) A.R.S. Supreme Court Rules.

Appellant's contention that policy number 88 1884 61 72 was still in full force and effect on the date of the accident in spite of the fact that the Gilitiuks had not paid any premiums since the expiration date of the policy, one and one-half years earlier, is grounded in the following provision of the insurance policy.

"A notice by the insurer to the policyholder of non-renewal, cancellation, or reduction in the limits of liability or coverage shall be mailed to the named insured by certified mail or United States post office certificate of mailing at least ten days prior to the effective date of such non-renewal, cancellation, or reduction in limits of liability or coverage."

Noting that the October 19, 1972 notice of cancellation mailed by Mid-Century to the Gilitiuks was neither mailed 10 days prior to the date of cancellation stated in the notice nor sent by certified mail, it is appellant's position that the insurance company's failure to strictly comply with the notice provision in the policy rendered the attempted cancellation nugatory. See *State Farm Mutual Automobile Ins. Co. v. O'Brien*, 24 Ariz.App. 18, 535 P.2d 46 (1975); *Di Prospero v. Nationwide Mutual Fire Insurance Company*, 30 Conn.Sup. 291, 311 A.2d 561 (1973); *Northern Insurance Co. of New York v. Mabry*, 4 Ariz.App. 217, 419 P.2d 347 (1966).

Appellee concedes that notice by first class mail is inadequate when the insurance policy requires notice by certified mail. The insurance company contends however that the adequacy of the October 19, 1972 "notice of cancellation" is not a relevant issue in this case because policy number 88 1884 61 72 terminated prior to October 8, 1972, by a process other than cancellation. It is appellee's position that the Gilitiuks' failure to pay a renewal premium prior to August 29, 1972 caused the policy to automatically lapse on that date, in accordance with the following provision of the policy:

"The policy shall expire at 12:00 o'clock noon standard time on the expiration date shown in item 2 of the declarations. The policy may be renewed for an additional policy term of six months each time the company offers to renew by sending a bill for the required renewal premium, and the insured pays said premium in advance of the respective renewal date."

To round out its position, Mid-Century contends that neither the policy nor court deci-

sions require that an insured be notified that a policy either will or has expired because of nonpayment of premiums. See *Kapahua v. Hawaiian Insurance and Guaranty Co.*, 50 Haw. 644, 447 P.2d 669 (1968); *Shepard v. United States Fidelity and Guaranty Co.*, 210 Kan. 652, 504 P.2d 228 (1972).

In his attempt to undermine the suggestion that the policy lapsed automatically for failure to pay the renewal premium, appellant quotes extensively from the case *State Farm Mutual Automobile Ins. Co. v. O'Brien*, 24 Ariz.App. 18, 535 P.2d 46 (1975):

> "The appellant's contention that the policy automatically expired at the end of the policy period is clouded by that clause which states that cancellation for nonpayment shall not occur without prior notice. Also, we have noted that additional portions of 'Policy Provisions', No. 17, seem to imply that failure to make a renewal premium payment will give rise to a 'right to cancel' as opposed to appellant's assertion of an automatic 'expiration'. The applicable section reads:
>
> " '*After this policy has been in effect for sixty days*, or if the policy is a renewal, effective immediately, *the company shall not exercise its right to cancel* or fail to renew the insurance afforded under this policy solely because of age or *unless* :
>
> " 'A. *The named insured fails to discharge when due any of his obligations* in connection with the payment of premium for this policy or any installment thereof whether payable directly or *under any premium payment plan*.'
>
> "It is important to note that the preceding passage indicates that the company regards the failure to make payment as a condition which gives rise to a right to 'cancel' where the insured fails to make a premium payment 'under any premium payment plan' as opposed to causing an automatic expiration. Payment of a renewal premium pursuant to the terms outlined in 'Declarations', No. 1 Policy Period, which appellant relies upon to support its 'expiration' interpretation, would arguably seem to fall within the all-inclusive phrase 'any premium payment plan'.

> "Thus, when appellee failed to make his renewal payment pursuant to the terms of the policy, the above-quoted clause would suggest that a right to cancel, for the failure to make payment under 'any premium payment plan', arose. Once the right to cancel arises, the cancellation clause would then appear to be applicable with its notice requirements. Having failed to meet the notice requirement, appellant has failed to satisfy the apparent condition precedent to claim a forfeiture. See, Couch on Insurance 2d, § 30.127 (1960)." (Emphasis theirs.) 535 P.2d at 48, 49.

■ Even if we were to approve of the court's reasoning on the merits, we could not cite it as authority for purposes of analyzing the policy currently under consideration, because as is often true in insurance cases, the reasoning in the passage revolves around a phrase in the policy that does not appear in policy number 88 1884 61 72. The corresponding provision in policy number 88 1884 61 72 states:

> "After this policy has been in effect for sixty days, or if the policy is a renewal, effective immediately, the Company shall not exercise its right to cancel or fail to renew the insurance afforded by the policy unless: 1. The named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereon".

It should be noted that this provision is identical to the provision analyzed in *O'Brien* with the exception that the phrase "whether payable directly or under any premium payment plan" has been excised. We find no ambiguity in this provision. As applied, it is clear that the phrase "payment of premium for this policy or any installment thereof" refers exclusively to payments for the six month term beginning February 29, 1972 and does not encompass renewal premium payments.

Since the failure to pay a renewal premium is not one of the conditions that activates the "right to cancel" provision of the policy, we agree with appellee that no "notice of cancellation" is required by that provision in order for the policy to be effectively terminated for failure to pay a renewal premium. Since the appellant has not demonstrated that some other provision of the policy required the insurance company to send a notice of cancellation in order to effectively terminate the policy, we agree with the appellee that the Gilitiuks' failure to pay the renewal premium prior to August 29, 1972 caused the policy to lapse automatically on that date under the expiration provision of the policy, and that the insurance company was not obligated to notify its insured of that fact. *Kapahua v. Hawaiian Insurance and Guaranty Co., supra; Shepard v. United States Fidelity and Guaranty Co., supra.*

The judgment of the trial court is affirmed.

STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.