BOWLING, Justice, for the Court:
The primary question involved in this appeal is whether there was sufficient evidence presented to the jury for it to find that appellant waived the lapse or the forfeiture of appellees’ automobile insurance policy issued by appellant. The cause is appealed from a jury verdict for appellees on that issue and comes from the Circuit Court of the First Judicial District of Hinds County.
Appellant contends that its request for a peremptory instruction at the conclusion of all the evidence should have been granted. Another primary contention by appellant is that the lower court erroneously admitted highly prejudicial evidence and that such admission constitutes reversible error.
In discussing the first and primary question in the case, as stated above, it is so elemental that citation of authority is not needed that in considering whether the lower court erred in refusing the peremptory instruction for appellant, the lower court and this Court are required to consider all the evidence most favorable to the party against whom the peremptory instruction is being requested, and to allow the trier of facts to resolve every reasonable inference in favor of that party. With this obligation and after a careful study of the record, we first relate the evidence applicable to the first alleged error.
In March, 1976, appellee Leanna Lindsey was under twenty-one years of age and was attending the University of Mississippi School of Nursing at the Medical Center in Jackson. Her home was in Starkville, Mississippi, which also was the home of her mother, appellee Mrs. Mary T. Lindsey. Leanna had a 1970 Volkswagon automobile. She desired insurance on that vehicle and contacted one Glenn Rawson, the local agent in Starkville for appellant, State Farm Mutual Automobile Insurance Company. All parties were good friends and attended the same church. At Rawson’s suggestion, due to Leanna’s age, the named insured was listed on the policy as “Mrs. Mary T. Lindsey,” Leanna’s mother, although Leanna kept and used the car in Jackson.
In January, 1977, Leanna graduáted from nursing school and had become twenty — one years of age. During that month she purchased a Buick automobile through a financing agreement with a local bank. She immediately contacted appellant’s agent, Rawson, instructing him of the automobile change and further instructing him that the policy should be placed in her name and gave him her Jackson address. The existing policy was changed and the usual six month policy period was added so that the next premium due date was on September 11, 1977. Due to a misunderstanding, the renewal policy still was issued in the name of Mrs. Mary Lindsey, showing the Stark-ville address. The proof is clear that for many years the business procedure of appellant company was for it to issue automobile policies for periods of six months each with a premium due for each period. It is undisputed that sometime prior to September 11, 1977, the premium due notice was mailed from the company’s computer center in Monroe, Louisiana, to the still named insured, Mrs. Mary Lindsey, at the Starkville address. Mrs. Lindsey placed this notice with other mail that had been received di *1191 rected to Leanna. On Leanna’s next visit home, she secured the premium notice and took it back to Jackson with her. At this time she was moving from the school dormitory to an apartment on Ridgewood Road. During the course of the move, the premium notice was misplaced. It was later found and on September 25, 1977, Leanna wrote a check payable to State Farm in the amount of $173.10, the amount requested on the premium notice from the company for the policy bearing the due date as stated above.
Leanna worked at night during the entire period in question and would get home about eight o’clock A.M. each day. On October 5,1977, she received a notice from the Starkville Bank that she should pay the overdue automobile policy premium. On the morning of October 6, 1977, Leanna [after stating that she had not mailed the September 25 check due to inability to secure stamps while working] placed the check in an envelope with the portion of the premium notice stating that it should be returned with the premium payment and deposited it in the apartment mail box. She then went to bed and got up late that afternoon. Afterwards, she and a friend went to a movie and at about 9:30 o’clock that evening, October 6, while driving the Buick car, she was involved in a collision with another vehicle at the intersection of North West and Taylor Streets in Jackson.
Leanna called her mother that night and requested that she contact Agent Rawson. Mrs. Lindsey did this and according to her, Rawson told her that everything was alright and that Leanna had a thirty-day grace period to pay the premium [Rawson later denied this but, as hereinbefore stated, the jury had a right to believe Mrs. Lindsey]. The mother then called Leanna and related to her the conversation with Agent Rawson. Rawson had given instructions to call appellant’s agent Wertz in Jackson. Leanna did so that evening and was informed that she should contact the company’s claims office in Jackson on the following morning. This was done by Leanna, who told the claims representative about the check being mailed with the required part of the premium notice being included. Leanna was informed by appellant’s claims agent that the computer printout from Monroe showed the policy had lapsed and that they would have to just wait and see what the company would do about the matter. Leanna talked with the claims representative “several times” during the next approximately two weeks, with the claim being held in abeyance pending final action by the company’s underwriting department.
On October 18, 1977, Leanna’s check was deposited in appellant’s premium receipt account. On October 19, it issued a new policy still in the name of Mrs. Mary Lindsey, and “back-dated” it to become effective 12:01 A.M., on October 7, some two and one-half hours after the collision occurred. According to the claims representative and the testimony of a Mr. Carter, a supervisor for the company in the Monroe, Louisiana, office of appellant, the reason for this action was that the envelope containing Leanna’s check and the premium notice showed a “P.M.” postmark rather than an “A.M.” postmark. He stated that had the envelope showed an “A.M.” postmark, the “new” policy would have become effective at 12:01 P.M. on October 6, which was some nine and one-half hours prior to the collision.
In December, 1977, appellees received a check from appellant in the amount of $32.40. The check was dated October 19, 1977, and did not state anywhere thereon any information as to why the check was issued and mailed. No witness for appellant ever explained the check. The reason for its issuance is completely unknown.
As stated at the outset, a study of the authorities on the question before us clearly shows that every case involving whether or not a lapse or forfeiture of an insurance policy is waived stands on a different factual basis and each has to be considered on its individual facts. We are not concerned here with a waiver being made by appellant as a matter of law. We are only concerned with whether or not all the testimony and its reasonable inferences made a question for the jury under the record of this particular case.
*1192 Recapitulating, we note several positive parts of evidence and reasonable inferences therefrom. At the outset, there obviously was a mix-up as to whose name would appear as the insured on the Buick automobile policy and to whom and what address the premium notices would be mailed. We next have the undisputed fact that the premium was not paid by September 11, 1977, the due date, and the end of the six months policy period. There was evidence from Mr. Carter, appellant’s representative from Monroe, that company procedure provided that if the overdue premium was received before the twenty-third day after being due, the existing policy would be reinstated; that if the premium was received from twenty-three to thirty-nine days after due date, a new policy would be prepared and placed in force, but if the overdue premium was received more than thirty-nine days after due date, the matter would be referred to a local agent for contact with the insured.
There is no dispute that at about eight o’clock on the morning of October 6, Leanna not only mailed the premium check but mailed with it the part of the premium notice she was instructed to mail back to the company with the check, which premium notice specified a particular policy with a particular number, and which policy was the one that was admittedly lapsed at that time.
It could reasonably have been inferred by the jury that during the period of approximately two weeks and several conferences between Leanna and the claims department, the company had notice that the Buick was a total loss and not insurable. Regardless of this, on October 19, the underwriting department issued a new “declaration” to be attached to the old pamphlet policy sold appellees in March, 1976, which declaration set out an entirely new policy with a new number and placed it into effect two and one-half hours after the collision occurred. It certainly can be reasonably inferred that the company knew the status of the matter between 12:01 A.M. on October 7 and October 19. The Buick car was a total loss and there was no insurable vehicle at the time the October 19th new policy was issued showing insurance on such a described car. As hereinbefore stated, a check for $32.40 was issued soon thereafter and was totally unexplained at the trial and in the record now before this Court. No one from the claims department testified in any way to refute the undisputed testimony of Leanna regarding her contacts with the company’s claims department for the approximate two weeks period of time.
It appears that the breakdown [as found by the jury] probably was a result of the necessary computerization by appellant of its large automobile insurance business. However, we cannot let that business procedure take away rights of individual insureds who are not computerized. As hereinbefore stated, we are not taking away any rights of either party-we are merely deciding whether or not there was sufficient evidence that requires us to affirm the verdict of the jury on the first issue.
We now turn to a decision as to whether or not under the authorities there was a jury question when considering the evidence and all reasonable inferences therefrom. In the case of Stonewall Life Insurance Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932), in discussing “waiver” of a forfeiture or a lapse, the Court stated:
If the insurance company has notice of the fact or facts which work a forfeiture at its option, any statement or conduct on its part inconsistent with forfeiture but consistent with nonforfeiture, will constitute a waiver of the forfeiture. “The law will never recognize one where the party claiming the forfeiture has not itself, at every stage, recognized it and insisted upon it.” . . .
Slight circumstances of intention to waive a forfeiture will be sufficient. The law “will seize upon slight circumstances as evidence of such intention.” . . .
See also Sovereign Camp W. O. W. v. Rhyne, et al., 171 Miss. 687, 158 So. 472 (1935); Continental Life Insurance Co. v. Clanton, 149 Miss. 289, 115 So. 569 (1928); Crum v. Prudential Insurance Co. of America, 356 F.Supp. 1054 (N.D.Miss., 1973).
*1193 There are several cases from the Supreme Court of Alabama on the question of waiver of a forfeiture. A situation similar to that in the case sub judiee was State Farm Mutual Automobile Insurance Co. v. Anderson, 294 Ala. 451, 318 So.2d 687 (1975). The Court there stated the following:
As a general rule, a contract of insurance is to be strictly construed against the insurer, and is to be liberally construed in favor of the insured, and, with respect to forfeitures, the courts will adopt that construction most favorable to the insured, and it may be said that forfeitures for nonpayment of premiums are not favored ...
The right to insist upon a forfeiture of a liability under a contract being a right which may be waived by the party in whom the right resides, such waiver may be implied from conduct inconsistent with the intention to exercise it, for neither party to a contract may receive the benefits accruing thereunder and avoid the liabilities created thereby. Romanoff Co. v. Cameron, 137 Ala. 217, 33 So. 864.

Probably there is no principle of insurance law more firmly settled, nor better grounded in justice and reason, than that an insurer, who receives and retains premiums, the very consideration for carrying the insurance risk, with knowledge of facts which, under stipulations for his benefit, would, in the absence of such knowledge, empower him to treat the policy as having never been in force, or as being no longer in force, will be held to have waived such stipulations. Waiver, strictly speaking, is a matter of intent. But, in such case, no proof of actual intent is required. Any other intent in such case would work a positive wrong or fraud on the insured. The law charges the insurer with the intent to waive under the doctrine of estoppel.
In its opinion in Anderson, supra, the Supreme Court of Alabama mentioned a case discussed by both appellant and appel-lees here-AIabama Farm Bureau Mutual Casualty Ins. Co. v. Hicks, 272 Ala. 574, 133 So.2d 221 (1961). An examination of that case and as pointed out by appellant, under a general set of facts similar to the case now before us, the Alabama Supreme Court held:
When the insurance company ascertained that Hicks suffered an accident during the defaulting period for which he claimed coverage, it could have offered (1) to return the premium for the defaulting period, or (2) it could have applied the premium for the period from November 27, 1956, to May 27, 1957, or (3) it could retain the premium and cover the collision loss.
The company chose the second condition and, as here, applied the premium to a new policy beyond the date of the collision that occurred after lapse. Appellant contends that this is what was done in the case sub judiee. The distinguishing feature is, however, that prior to the issuance of the new policy by appellant on October 19, the company had knowledge, according to any reasonable inferences undisputed in this record, that appellees’ car was a total loss and there was no car to insure under a new policy as was done in Hicks. In addition, it had Leanna’s check and the premium notice showing the only policy for which she was offering payment. She never requested a new policy and no representative of appellant ever inquired as to whether she wanted a new policy, even though, as before stated, there was no car to be insured.
Therefore, we find that under the evidence in this particular record there was a sufficiency thereof along with all reasonable inferences to be gained therefrom which required the lower court to deny appellant’s motion for a directed verdict, request for a peremptory instruction, and a judgment notwithstanding the verdict.
We now come to the second question in the case: Whether or not it was prejudicial error for the lower court to allow certain *1194 evidence of claims being made against ap-pellee, Leanna Lindsey, growing out of the collision in question.
Appellant filed its motion in limine requesting a pretrial order from the lower court adjudicating that the evidence in question was immaterial on the issue involved in the case about to be tried and would be highly prejudicial if even mentioned at the trial. This motion was overruled, and at the trial, the lower court permitted appellees to introduce a copy of a declaration then on file in the clerk’s office of the court under which the other party involved in the collision had filed a personal injury suit against appellee, Leanna Lindsey. Appellees also were permitted to introduce over objection a letter received by appellees from the insurance company of the other party making a demand on appel-lees for payment of its subrogation claim for repairing the other car involved in the collision.
The suit involved in this appeal was based solely on an attempt to collect for the loss of the Buick car owned by appellee, Leanna Lindsey. The question involving the policy coverage was close and it was highly prejudicial for the lower court to permit the introduction of the declaration for personal injury damages by the other car owner and the subrogation claim by his insurance carrier. As stated in Pacific Company v. Roy, 102 U.S. 451, 26 L.Ed. 141 (1880), this evidence “was well calculated to arouse the sympathy of the jury ... the reasonable presumption is that it had some influence upon the verdict.” Also see Paramount Fire Ins. Co. v. Anderson, 211 Miss. 372, 51 So.2d 763 (1951); 5A C.J.S. Appeal and Error § 1724, ps. 937-949.
We hold that the introduction of the above set out evidence was prejudicial and its introduction was reversible error. Therefore, we conclude that it is necessary to reverse the cause and remand it to the lower court for another trial.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
PATTERSON, C. J., and COFER, J., took no part.