647 P.2d 1144

Cesar J. SERENO and Joy E. Sereno, his wife, Plaintiffs-Appellants,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY, an Ohio corporation, Defendant-Appellee.

No. 15836.

Supreme Court of Arizona, In Division.

June 28, 1982.

Robinson & Syme by James J. Syme, Jr., Glendale, for plaintiffs-appellants.

Lewis & Roca by Paul G. Ulrich, John A. Miller, Michael L. Cooper, Phoenix, for defendant-appellee.

CAMERON, Justice.

This is an appeal from the granting of a motion for summary judgment in favor of defendant Lumbermens Mutual Casualty Company against the plaintiffs Cesar J. Sereno and Joy Sereno, husband and wife. We have jurisdiction pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We are asked to answer the following questions on appeal:

1. Should Lumbermens Mutual Casualty Company be estopped to deny coverage because of the late payment of a renewal premium when they had es-tablished a pattern of accepting late payments during the previous year?

2. Could the secretary of the local Lumbermens' agency bind Lumbermens in allowing a late renewal payment to be made?

The facts necessary for a determination of this case are as follows. On 26 August 1977, Lumbermens Mutual Casualty Company, a subsidiary of Kemper Insurance Company, issued an automobile insurance policy to plaintiffs Cesar and Joy Sereno. Coverage under the policy was to run from 26 August 1977 to 26 August 1978. The policy was purchased from an insurance agency in Oakland Park, Florida, at a time when the Serenos were residents of that state. The premium for the year's coverage was to be made in installments. These installment payments were consistently delinquent throughout the policy period, but the payments were always accepted and Lumbermens never canceled the policy. In all cases, however, the payments had been made before the termination date as indicated in the notice of payment.

In May of 1978, the Serenos moved to Arizona without notifying Lumbermens of the change in address. In July 1978, one month before the insurance policy was to expire, Lumbermens sent the Serenos a renewal notice at their Florida address. The renewal notice was forwarded to Phoenix and was finally received by the Serenos on or about 26 August 1978, the day that the renewal premium was due. The renewal notice called for a premium for the year of $813.00, with an installment due of $165.00. The last installment paid on the previous year's coverage was $136.00. A paragraph of the policy entitled "Automatic Termination" reads:

"If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer."

Mr. Sereno had returned to Florida to settle his personal affairs in that state, and Mrs. Sereno searched the Phoenix telephone directory for an authorized Kemper Insurance Agency. She then telephoned the O'Keefe Insurance Agency and spoke with a secretary regarding her predicament and told the secretary that her husband would not be returning from Florida for one week. According to Mrs. Sereno, the secretary informed her that there would be "no problem" in paying the premium when her husband returned and that her policy would not be canceled in the interim. On 8 September 1978, a check for $136.00 dated that day payable to Kemper Insurance was mailed to Florida. The next day, 9 September 1978, Mrs. Sereno was seriously injured when her husband accidently backed their car over her while in the driveway of their home. Later, on 14 September 1978, the check was deposited to defendant Lumbermens' account. The very next day, however, Lumbermens issued a check for $133 to the Serenos which represented a rejection of the premium, minus three dollars due on the lapsed policy.

Lumbermens denied coverage on the grounds that the Serenos were no longer insured because the renewal premium had not been paid as required by the terms of the policy, and therefore the policy was no longer in effect when the accident occurred.

The Serenos seek to avoid the effect of the "Automatic Termination" provision of the policy by invoking two legal theories. First, the Serenos claim the benefit of the equitable remedy of estoppel, because Lumbermens had always accepted late installment payments towards the policy premium and should now be estopped from denying benefits on those grounds. Second, the Serenos contend that the O'Keefe Agency secretary was acting as an agent of Kemper Insurance and Lumbermens when she told Mrs. Sereno that there would be "no problem" in waiting to pay the renewal premium when Mr. Sereno returned from Florida. Lumbermens moved for summary judgment which was granted, and the Serenos appeal.

## ESTOPPEL

The Serenos contend that Lumbermens' consistent acceptance of late installment payments on the first year's premium created a right to rely on late payment of the renewal premium as well. We do not agree. The difference between the acceptance of late installment payments toward an existing policy that has not been terminated and the acceptance of an installment payment on the renewal of a policy that has terminated according to the terms of the policy, is a distinction that is vital in this case.

As indicated by the automatic termination provision quoted above, the insurance policy expired on 26 August 1978 because no payment for renewal of the policy was made by that time. Lumbermens did not cancel the policy for late payment; the policy was already canceled by the failure to renew. In such a case, we have ruled, in construing similar "automatic termination" provisions:

"* * * we agree with the appellee that the Gilitiuks' failure to pay the renewal premium prior to August 28, 1972 caused the policy to lapse automatically on that date under the expiration provision of the policy, * * *." *Tomeoka v. Mid-Century Ins. Co.*, 118 Ariz. 394, 397, 577 P.2d 245, 248 (1978).

Lumbermens' acceptance, during the one year term of the policy, of payments made late but before termination of the policy, does not estop Lumbermens from enforcing the provision of the policy which requires the payment of a premium before the policy may be renewed. *Tomeoka*, supra. The company can, by accepting delinquent payments on an existing policy, be estopped, either by the policy or its conduct, from imposing the late payment as a bar to coverage. The renewal of a policy is a different matter. The insured must follow the specific provisions of the policy concerning renewal. In the instant case, the notice of July 1978 was an "offer to renew or continue." By failing to pay the first installment of the renewal premium, the Serenos did not accept that offer and

the policy terminated automatically on 26 August 1978. *Tomeoka*, supra.

### AGENCY

 The Serenos on appeal contend that the secretary of the O'Keefe Agency in Phoenix, Arizona, listed in the telephone directory as an agent of Kemper and Lumbermens Mutual Casualty Company, told Mrs. Sereno that she need not worry about paying the premium promptly, and that it would be all right to wait until her husband returned from Florida. We need not, however, consider this matter on appeal. While testimony concerning this is covered in Mrs. Sereno's deposition, the matter was not raised in the opposition to the motion for summary judgment, nor, so far as we know, was it argued to the trial court on the motion for summary judgment. ·It was instead raised for the first time on appeal. Rule 56(e), Arizona Rules of Civil Procedure, 16 A.R.S., reads in part:

> "* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The import of this rule for purposes of appeal is that the party opposing the motion for summary judgment must bring to the attention of the trial court valid reasons, if they exist, for denying the motion for summary judgment. The trial judge must be given a chance to rule on these particular objections before those issues are raised on appeal as grounds for reversal of the decision of the trial judge. We do not consider this issue on appeal because it was not raised for consideration in the Superior Court. *Gallego v. Strickland*, 121 Ariz. 160, 589 P.2d 34 (App.1978); *Scottsdale Discount Corp. v. Dodson*, 4 Ariz.App. 22, 417 P.2d 535 (1966); *Cimino v. Alway*, 18 Ariz.App. 271, 501 P.2d 447 (1972).

Affirmed.

HAYS and FELDMAN, JJ., concur.