740 P.2d 500

**Edward James DeTEMPLE, a single person, and Scott W. Carmichel, a single person, Plaintiffs-Appellants,**

v.

**SOUTHERN INSURANCE COMPANY, a Texas corporation, Defendant-Appellee.**

**No. 1 CA–CIV 8742.**

Court of Appeals of Arizona, Division 1, Department B.

May 5, 1987.

Review Denied July 14, 1987.

John C. Stallings, Prescott, for plaintiff-appellant Carmichel.

Perry, Drutz & Musgrove, P.A. by Mark W. Drutz, Prescott, for plaintiff-appellant DeTemple.

Pavilack & Spack, P.C. by Sidney N. Lachter, Scottsdale, for defendant-appellee.

## OPINION

GREER, Judge.

This appeal is from summary judgment in a declaratory judgment action in which the trial court found that a liability insurance policy did not provide coverage for an automobile accident due to the insured's failure to pay a timely renewal premium.

Edward James DeTemple contacted James A. Moll, an insurance agent for Southern Insurance Company [Southern], in March, 1984 to obtain an automobile insurance policy for his newly acquired 1978 Dodge pickup truck. DeTemple paid $88.00 in cash to Moll on March 15, 1984 and later received a copy of the insurance policy which stated that it was for a term of one month from March 15, 1984 until April 15, 1984. DeTemple received notices in April, May and June of 1984 offering to renew the policy for an additional month in consideration for an additional $88.00 premium due on a date certain. DeTemple timely paid the premiums in April and May, but failed to comply with the terms of the renewal notice calling for payment by June 16, 1984 in order to renew the policy for June 16, 1984 through July 16, 1984.

On June 17, 1984 DeTemple loaned his pickup to his brother Clifford. Clifford was driving the vehicle on June 18, 1984 when it ran off the roadway causing a wreck which killed Clifford and seriously injured his passenger, Scott W. Carmichel. The pickup was totally destroyed as a result of the accident.

DeTemple notified Moll of the accident on June 19, 1984. On that same day DeTemple mailed a money order for $88.00 to Southern's corporate offices together with a cover letter indicating that the payment was for coverage from June 16, 1984 through July 16, 1984.

On July 3, 1984 Moll sent a letter to DeTemple enclosing a general renewal endorsement of DeTemple's automobile insurance. The endorsement was stamped "reinstatement" and provided that in consideration for the additional premium, the policy was renewed from June 20, 1984 to July 20, 1984. Moll's letter to DeTemple stated,

"Frankly, I am confused—did you replace the 1978 Dodge? Please let me know what's happening."

DeTemple normally paid his premium directly to Moll in cash. Although DeTemple called Moll on June 19, 1984 and told him about the accident, he did not attempt to pay Moll directly. DeTemple testified that he did not recall that Moll told him anything about the effect of a late premium on coverage. DeTemple also stated that Moll did not advise him to mail the insurance premium directly to Southern. However, another person did advise him to do so. There is nothing in the record to indicate that this advice came from an agent of Southern.

Southern apparently received DeTemple's money order on June 20th and thereafter issued its endorsement renewing the policy from June 20, 1984 to July 20, 1984. It is unclear how much time elapsed between June 20, 1984 and DeTemple's receipt of the endorsement. DeTemple testified that he may have received copies of the terms of the renewal from Moll along with Moll's letter of July 3, 1984. DeTemple did not ask Southern to return his $88.00 and Southern attempted to return the money for the first time after this appeal began by tendering it to opposing counsel with the answering brief.

DeTemple and Carmichel filed a complaint for declaratory judgment against Southern to determine whether Southern was obligated to provide coverage for the June 18, 1984 accident. The trial court concluded that the policy had terminated prior to the accident. DeTemple and Carmichel then brought this appeal.

On appeal, DeTemple and Carmichel argue that (1) Southern bound itself to the terms contained in the cover letter accompanying the tender of the $88.00 money order thus giving coverage to DeTemple for the period of June 16, 1984 to July 16, 1984, and (2) the insurance policy required Southern to provide DeTemple with 10 days written notice prior to terminating the policy for non-payment of the premium.

We consider first the effect of Southern's receipt and retention of DeTemple's $88.00. For purposes of this argument only, DeTemple and Carmichel admit that DeTemple's automobile liability policy was a month to month policy which automatically terminated on June 15, 1984. However, they argue that Southern's negotiation of the money order which was tendered with specific instructions to apply it to insurance coverage for June 16, 1984 to July 16, 1984 and retention of the money, was either a waiver of Southern's right to deny coverage for the accident or estops Southern from denying coverage. While these two theories are not clearly delineated in the briefs, they are distinct concepts which must be addressed separately.

## WAIVER AND ESTOPPEL TO DENY COVERAGE

DeTemple and Carmichel rely on the well established principle that if an insurer unconditionally accepts premiums with knowledge that an accident has occurred, it has waived its right to insist on forfeiture based on late premium payment. *Greber v. Equitable Life Assur. Soc.*, 43 Ariz. 1, 28 P.2d 817 (1934). *See generally* Annot. 7 A.L.R.3rd 414 (1966); 15 Appleman, *Insurance Law and Practice* § 8503 (1985). In conjunction with this argument they allege that Moll's knowledge of the accident must be imputed to Southern. Southern does not challenge the imputation of knowledge to it through its agent but denies that it accepted DeTemple's offer to provide coverage for the accident and further denies that it waived its right to refuse coverage.

■ Addressing first the issues of contract formation, we note that Southern's renewal notices were an offer to provide a new policy if DeTemple made a premium payment by a certain date. Thus Southern's June notice offered to provide coverage from June 16, 1984—July 16, 1984 if payment of $88.00 was received by June 16.

■ DeTemple did not accept Southern's offer to renew his policy by making a timely premium statement. Instead he made a counter-offer by tendering payment on June 20, 1984 for coverage from June 16—July 16 and Southern negotiated DeTem-

ple's money order. However, it is generally held that negotiating a late premium does not *by itself* create an acceptance. *See McMillon v. Old Republic Life Ins. Co.,* 33 Ill.App.3d 658, 342 N.E.2d 246 (1975) (negotiation of check but money refunded with letter notifying that policy lapsed); *Troutman v. Nationwide Mut. Ins. Co.,* 400 S.W.2d 215 (Ky.Ct.App.1966); *Kimball v. Kingsbury,* 27 Utah 2d 70, 493 P.2d 300 (1972); (negotiation of check didn't reinstate policy) *Harris v. Criterion Ins. Co.,* 222 Va. 496, 281 S.E.2d 878 (1981) (check negotiated but refund sent 12 days later). *See generally* Annot. 7 A.L.R.3rd 414 § 4(b) (1966).

■ Southern expressly stated within a short period of time (at least by July 3, 1984) that it would provide June 20 (date of receipt) to July 20 coverage in exchange for the premium. This was a rejection of De-Temple's offer and another counter-offer. *United Savings Life Ins. Co. v. Coulson,* 560 S.W.2d 211, 214 (Tex.Civ.App.1977); *Liberty Nat'l Life Ins. Co. v. Smith,* 356 So.2d 646, 648 (Ala.1978). *See generally* 12 Appleman *Insurance Law and Practice* § 7151 (1985).

One commentator has stated that:

An insurance company which accepts payment for a premium on a lapsed policy with the knowledge that the accident occurred during the period of lapse, and which intends to apply the premium from the date it was received, *must clearly convey this intent to the insured before the premium is accepted.* Certainly, *where the insured specifically directs how the payment is to be applied, the insurer must comply with such direction or return the payment.*

*See* 15 Appleman, *Insurance Law and Practice* § 8503, at 326 (1985) (emphasis added). Southern made clear its intention not to provide the coverage requested by DeTemple and offered different coverage but did not return the $88.00. DeTemple did not respond to the "counter-offer" nor demand a return of the premium. No contract was formed. However, we must consider whether Southern waived its right to deny coverage. A waiver is either an ex-

press, voluntary, intentional relinquishment of a known right or such conduct as warrants inference of such intentional relinquishment. *American Continental Life Ins. Co. v. Ranier Constr. Co., Inc.,* 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980); *Northern Arizona Gas Serv., Inc. v. Petrolane Transport, Inc.,* 145 Ariz. 467, 476, 702 P.2d 696, 705 (App.1984). In discussing waiver in the context of receipt of late premium payments, one commentator has stated:

To constitute a waiver there need only be a manifestation of an intention, express or implied, that a right is given up or surrendered, and that the party alleged to have waived the breach intends to continue the contract in force or does any unequivocal act which is wholly inconsistent with forfeiture of the contract after acquiring the knowledge of its breach.

6 *Couch on Insurance* § 32:274 at 587 (2d ed. 1985).

■ Southern did not indicate any intention to provide coverage for the accident; nor did it unequivocally demonstrate an intent to waive the lapse of DeTemple's policy. Southern's negotiation of the money order was quickly followed by a clear statement that it intended to apply the money toward a policy period commencing on the date of receipt of payment. *Compare Central Nat'l Ins. Group v. Grimmett,* 340 So.2d 767 (Ala.1976) (insurer accepted premiums without explaining its intent for coverage to start upon receipt of payment until 90 days after receipt). Under these circumstances, we find no waiver. This, however, does not end our inquiry.

DeTemple and Carmichel have also argued that Southern's actions estop it from denying coverage. They contend that because DeTemple did not respond to Southern's counter-offer to provide coverage from June 20 through July 20 and because Southern acted egregiously by not returning his $88.00, Southern is estopped to deny a contract based on the terms of DeTemple's letter. They point out that Southern knew on receipt of the premium that DeTemple had no car to insure from June 20, 1984 to July 20, 1984.

Estoppel is created where one party, by its conduct, induces another to believe in certain material facts, which inducement results in justifiable reliance thereon resulting in injury to the person thus relying. *Equity General Ins. Co. v. C & A Realty Co.*, 148 Ariz. 515, 518, 715 P.2d 768, 771 (App.1985); *State Farm Mut. Ins. Co. v. Robison*, 11 Ariz.App. 41, 45, 461 P.2d 520, 524 (1969).

In the context of insurance, principles relating to estoppel have been described as follows:

> In accord with general principles, it is essential that the insured be misled by the conduct of the insurer with respect to his default in the payment of premiums in order to give rise to an estoppel which bars the forfeiture, lapse, or suspension of the policy therefor. It must be shown that the insured relied upon the representation of the insurer that there would not be forfeiture and was induced thereby to take some action to his own injury. Where the conduct of the insurer leads the insured to believe that a forfeiture will not be incurred, an estoppel arises. If the insurer at the time of forfeiture for nonpayment or subsequently thereto takes a position inconsistent with his contract right to forfeit, and the evidence or reasonable inferences therefrom show that the insured was misled to his damage, and the policy matures while the insured is under the belief that his contract is in force, it is liable.

6 *Couch on Insurance* § 32:271 at 584–85 (2d ed. 1985).

One jurisdiction has held that where an insurer receives a late premium under circumstances analogous to the instant case, it may do one of three things: (1) it may return the premium; (2) it may apply the premium to create a new policy from the date of receipt to a future date or (3) it may retain the premium and cover the accident which has already occurred. *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Hicks*, 272 Ala. 574, 576, 133 So.2d 221, 223 (1961). *See also Central Nat'l Ins. Group v. Grimmett; Allen v. Dairyland Ins. Co., Inc.*, 391 So.2d 109 (1980). Where an acci-dent occurred after the lapse of a policy for nonpayment of premiums and the insurer advised the insured when accepting a belated premium that coverage would be prospective, the policy was held not to cover the accident. *Id. But see State Farm Mut. Ins. Co. v. Lindsey*, 388 So.2d 1189 (Miss.1980) (distinguishes the Alabama cases on grounds that insurer in *Lindsey* knew when it issued new policy with new number that there was no car to insure).

In *Schifalacqua v. CNA Ins.*, 567 F.2d 1255 (3rd Cir.1977), the court addressed a situation in which a disability insurer did nothing to induce an insured to believe that a policy was in force at the time of an accident which occurred after the insured had failed to make a premium payment. The court found that under Pennsylvania law, even if the insurer's subsequent acceptance of late premium payments could be said to have induced the belief that the policy had been revived, the insured's reliance on that belief in no way contributed to his failure to obtain coverage for the earlier accident. The court held that these facts did not establish an implied waiver or estop the insurer from proceeding with its right of forfeiture during the interval between lapse of policy for nonpayment of premium and the insured's tender of late payment.

In *Van Hulle v. State Farm Mut. Auto. Ins. Co.*, 99 Ill.App.2d 378, 241 N.E.2d 320 (1968), *aff'd*, 44 Ill.2d 227, 254 N.Ed.2d 457 (1969), an insurer was informed that the insured's check, which was sent to the insurer on the date of the accident, was for a premium which had been due two months earlier. The insurer was also informed that if the insurer was not going to afford coverage for the accident the insured wanted his money back because the automobile had been demolished and he did not need any future coverage. Instead of returning the remittance with a letter of explanation, the insurer cashed the check after holding it for three weeks. The court held that there was coverage by virtue of acceptance of the premium with knowledge of the purpose of the tender. Without deciding whether Arizona would be in accord with *Van Hulle*, we note that DeTemple did not

demand a refund. Moreover, in contrast to the insured in *Van Hulle*, DeTemple did not respond to Southern's clear statement that it intended to apply the $88.00 to coverage as of the date of receipt.

DeTemple and Carmichel presented no evidence which would indicate that DeTemple had been misled into believing that there was coverage for the accident because of Southern's retention of the $88.00. To the contrary, Southern notified DeTemple within a short period of time that coverage was from date of receipt only. Further, DeTemple presented no evidence that he relied on the existence of such purported coverage to his detriment. Obviously, he was not misled into failing to obtain other insurance which would have covered the accident because the events of which he complains occurred after the date of the accident.

■ Southern's long delay in offering to return DeTemple's $88.00 may have been improper. However, unless DeTemple relied upon that delay to his detriment in the context of coverage for the accident, he has failed to establish a necessary element of the doctrine of equitable estoppel. *See State Farm Mut. Ins. Co. v. Robison. Accord State Farm Fire & Cas. Co. v. Continental Ins. Co.*, 606 F.Supp. 155 (D.C.Ky. 1985); *Troutman v. Nationwide Mut. Ins. Co.*, 400 S.W.2d at 216–17; *Harris v. Criterion Ins. Co.*, 222 Va. at 502, 281 S.E.2d at 881. The only detriment which is apparent from the record is the loss of the use of his $88.00 for other purposes. While DeTemple may have a claim against Southern for wrongful retention of the $88.00, it does not follow that he has a claim for insurance coverage on grounds of estoppel.[1]

Based on our review of the record we conclude that Southern did not waive its right to deny coverage, nor is it estopped to deny coverage.

## WAS THE CONTRACT AMBIGUOUS

We consider next appellant's argument that Southern was to give DeTemple 10 days notice of its intent to forfeit for nonpayment of the premium.

DeTemple's policy contained a section entitled "Termination." Within this section was a subsection entitled "Cancellation." Under the subsection referring to cancellation, the policy provided:

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. At least ten days notice:

(1) If cancellation is for nonpayment of premium; or

(2) If notice is mailed during the first 60 days and this policy is in effect and this is not a renewal or continuation policy; or

b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this a renewal or continuation policy, we will cancel only:

a. For nonpayment of premium; or [other reasons not pertinent to this case]....

In addition to the subsection dealing with cancellation, the termination provisions in the policy also contained a subsection entitled "Automatic Termination." Under this provision the policy provided:

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

DeTemple and Carmichel argue that the policy was ambiguous and that DeTemple could reasonably have believed that he had a ten-day grace period prior to his policy being cancelled for nonpayment of a premium. Southern maintains that there was an automatic termination of the policy because the policy was a "month-to-month policy" and automatically expired each month unless a premium was paid.

---

1. We do not decide whether Southern's retention of the $88.00 was wrongful in light of DeTemple's silence when he was in receipt of the counter-offer. It is not necessary for us to reach this issue.

The first page of the policy declarations expressly provides that the policy is for a term of one month from March 15, 1984 through April 15, 1984. Further, each renewal endorsement sent to DeTemple clearly provides that in consideration for an additional premium, Southern offers to renew the policy for a particularly defined month.

DeTemple and Carmichel rely upon *State Farm Mut. Automobile Ins. Co. v. O'Brien,* 24 Ariz.App. 18, 535 P.2d 46 (1975) in support of their contention that the policy is ambiguous in that the word "premium" as used in the cancellation provision in paragraph 2(a)(1) could refer not only to premiums paid during the term of the insurance, but could also reasonably be read to include renewal premiums. However, the policy being construed in *O'Brien* was substantially different from the policy at issue here. It did not contain the clear statement that: "Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer." The policy at issue makes a clear distinction between the effect of payment of premiums during the term of a policy and the failure to pay premiums for purposes of renewing the policy.

Provisions almost identical to those in this policy were considered in *Safeco Ins. Co. v. Irish,* 37 Wash.App. 554, 681 P.2d 1294 (1984) in which the court held that the policy terms clearly and unambiguously informed the insured that failure to pay a renewal premium resulted in an automatic termination of the policy.

Further, in *Tomeoka v. Mid-Century Ins. Co.,* 118 Ariz. 394, 577 P.2d 245 (1978), our supreme court found that an insurance policy provision requiring a ten-day notice prior to the date of cancellation was inapplicable where the policy also provided an automatic termination if the insured failed to pay a renewal premium. Without either approving or disapproving the reasoning of *O'Brien,* the supreme court distinguished that case by comparing the policy before it with the policy provision in *O'Brien* and concluding that there was no ambiguity

which would confuse cancellation for failure to pay premiums during the term of the policy and failure to make renewal premium payments. The court held that:

> Since a failure to pay a renewal premium is not one of the conditions that activates the "right to cancel" provisions of the policy, we agree with appellee that no "notice of cancellation" is required by that provision in order for the policy to be effectively terminated for failure to pay a renewal premium.

118 Ariz. at 397, 577 P.2d at 248.

Whether the acceptance of a late payment tendered after the accident and the non-return of this premium somehow reinstate or renew a policy to preclude a lapse was considered by our supreme court in *Sereno v. Lumberman's Mut. Cas. Co.,* 132 Ariz. 546, 647 P.2d 1144 (1982). The court stated:

> Lumberman's acceptance during the one year term of the policy payments made late but before termination of the policy does not estop Lumberman's from enforcing the provision of the policy which requires the payment of a premium before the policy may be renewed. (Citations omitted). The company can by accepting delinquent payments on an existing policy be estopped either by the policy or its conduct from imposing the late payment as a bar to coverage. The renewal of a policy is a different matter. The insured must follow the specific provisions of the policy concerning renewal. In the instant case, the notice of July 1978 was an offer to renew or continue. By failing to pay the first installment of the renewal premium the Serenos did not accept that offer and the policy terminated automatically on 26 August 1978. (Citations omitted).

132 Ariz. at 548, 549, 647 P.2d at 1146, 1147. *See also, Holguin v. Aetna Cas. & Sur. Ins. Co.,* 2 CA–CIV 5737 (Ariz.App. Oct. 23, 1986).

■ DeTemple has cited numerous cases including *Darner Motor Sales v. Universal Underwriters,* 140 Ariz. 383, 682 P.2d 388 (1984) for the principle that ambiguities in an insurance policy are to be resolved

against the insurer. However, we conclude that the insurance policy at issue in this case is not ambiguous and that these principles are inapplicable.

Additionally, however, DeTemple appears to argue that the express terms of the insurance policy which he received from Southern were contrary to his reasonable expectations, again relying on *Darner*.

In its discussion of the doctrine of reasonable expectation in *Darner*, our supreme court stated as follows:

> We have previously recognized the doctrine of "reasonable expectations." *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. at 146, 650 P.2d at 448; *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 536–37, 647 P.2d 1127, 1134–35, *cert. denied*, 459 U.S. 1070, 74 L.Ed.2d 632, 103 S.Ct. 490 (1982). Of course, if not put in proper perspective, the reasonable expectations concept is quite troublesome, since most insureds develop a "reasonable expectation" that every loss will be covered by their policy. Therefore, the reasonable expectation concept must be limited by something more than the fervent hope usually engendered by loss. Such a limitation is easily found in the postulate contained in Corbin's work—that the expectations to be realized are those that "have been induced by making of a promise." 1 Corbin, *supra* § 1 at 2.

*Id.* at 389–90. The court also adopted the *Restatement (Second) of Contracts* § 211(3) as the codification of and limitation on the "reasonable expectations" rule as applied to standardized agreements. The comments reads as follows:

> Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation ... [An insured] who adheres to the [insurer's] standard terms does not assent to a term if the [insurer] has reason to believe that the [insured] would not have accepted the agreement if he had known that the agreement contained the

particular term. Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the adhering party never had an opportunity to read the term, or if it is illegible or otherwise hidden from view. This rule is closely related to the policy against unconscionable terms and the rule of interpretation against the draftsman.

*Restatement (Second) of Contracts* § 211 comment F, *quoted in Darner*, 140 Ariz. at 391–92, 682 P.2d at 396–97.

In the opening brief it is argued that DeTemple advised Moll during their first meeting in March, 1984 that he wanted to make monthly payments but did not want month-to-month coverage. The brief contends that DeTemple was advised by Moll that he could make monthly payments and that based upon this, DeTemple reasonably expected that his insurance coverage would not automatically expire if he failed to make the monthly premium payment by the due date. However, the only evidence presented to the trial court was an affidavit by Edward DeTemple that he had "advised James Moll that I did not want to make month-to-month coverage but wanted to make monthly payments," and that "Moll advised me that I could make monthly payments." There is no evidence that Moll informed DeTemple that he could purchase the contract for more than a one-month term and yet make monthly payments. To the contrary, Moll's affidavit, which was not controverted, stated:

> At the time I obtained the application for insurance ... from Edward James DeTemple, I told him the policy was for a one month term and could be renewed on one month terms thereafter, provided he pay the premium each month on the due date.

DeTemple did not present evidence that Moll misled him into believing that he had other than month-to-month coverage. Rather, he bases his "reasonable expectations" on what *he had* told Moll and from reading a copy of the insurance policy. As previously discussed, we have found that this policy is not ambiguous. DeTemple did not assert that Moll informed him that the policy was for more than a one-month term. DeTemple has therefore failed to show any expectation that "has been induced by the making of a promise," or that he would not have accepted the agreement if he had known that the policy was for only one month. Thus, there are no disputed facts which would preclude the entry of summary judgment in this matter.

The judgment of the trial court is affirmed.

CORCORAN and KLEINSCHMIDT, JJ., concur.